14351

STOVAL ET AL. v. SAWYER, CHIEF HIGHWAY COMMIS-
SIONER, ET AL.

(187 S. E., 821)

380

Before BELLINGER, J., Richland, October, 1935.

*Messrs. John M. Daniel, Attorney General, J. Ivey Humphrey,* and *M. J. Hough, Assistant Attorneys General,* and *L. M. Cantrell,* for appellants,

*Messrs. Harry D. Reed, Frank P. McGowan* and *M. S. Whaley,* for respondents,

September 8, 1936.

*Per curiam.*

At its regular session of 1930, the General Assembly passed an Act (36 Stat. at Large, p. 1228) providing for an annual license tax on motor vehicles operated in this State by nonresident persons, firms, or corporations; for exemptions in certain cases; and for rules and regulations to be declared by the State Highway Department and penalties for violations thereof. This Act was incorporated in the Code of 1932. See Sections 5896-5900.

Section 5896 provides: "Before operating upon the public highways of this State every nonresident person, firm or corporation operating a motor vehicle or motor vehicles on the highways of this State shall pay to the State Highway Department an annual license. * * *" Then follows the schedule of fees required to be paid, etc. Section 5897: "For a period of ninety (90) days in any given year no nonresident owner of a passenger motor vehicle duly registered in and licensed by another State shall be required to pay the annual license required by Section 5896 for a passenger motor vehicle, except where such vehicle is used regularly or periodically in this State for business or commercial purposes. * * *" And Section 5899: "The State Highway Department is hereby authorized and empowered to promulgate rules and regulations defining any word or term used in Sections 5896 to 5900 and all such rules and regulations shall have the full force and effect of law. * * *"

Pursuant to the authority given, the department made the following rule or regulation:

"The term 'nonresident,' as used in the sections therein referred to, is hereby defined to mean any person, firm or corporation not engaged in any business, profession, occupation or employment in the State of South Carolina.

"Any person who moves into the State of South Carolina for the purpose of engaging in any business, profession, occupation or employment, immediately becomes a resident of this State and is immediately liable to the State for the payment of regular motor vehicle license fees in case such person operates a motor vehicle in the State, but for administration purposes the motor vehicle division, its officers and agents, are hereby authorized and directed to allow any such person a period of ten (10) days, without penalty, in which to secure motor vehicle license or licenses.

"The words, 'motor vehicle license or licenses,' as used herein, refer to front and rear license plates as required by law."

This action was commenced by the plaintiffs in September, 1935. They alleged that they were residents and citizens of states other than the State of South Carolina, were employees of the United States Government under the supervision of the credit administration at Washington and had been temporarily in South Carolina for a period not exceeding 90 days during that year; Stovall and Collins, as bank examiners, being engaged in examination of the Federal Land Bank of Columbia, and Lambertson, as a reviewing accountant, in tabulating and statistical work at the same bank. They further alleged that the portion of Section 5899 above quoted, and the regulation or rule made by the department in pursuance thereof, were null and void, such part of that section being an unconstitutional delegation of legislative authority. It was also alleged that the plaintiffs were the owners of motor vehicles duly licensed in other states; that these automobiles had not been used by them in South Carolina regularly or periodically for business or commercial purposes; that the plaintiffs had been arrested and tried before a magistrate for the alleged violation of the rule of the highway department above set out, and that the charges against them had been dismissed on the ground that the defendants were attempting to enforce an unconstitutional regulation; that

the defendants, however, were threatening to rearrest the plaintiffs for the same alleged offense, which would result in their rights being unlawfully invaded and their immunities and privileges unduly abridged. They asked by way of prayer, that the quoted part of Section 5899, and the rule promulgated by the department pursuant thereto, be declared unconstitutional, null, and void, and that a permanent injunction issue to prevent the enforcement by the defendants of such regulation.

In addition to the summons and verified complaint, a rule issued by his Honor, Judge Bellinger, was served on the defendants requiring them to show cause, if any they had, why they should not be enjoined from arresting and interfering with the plaintiffs in the operation of their automobiles upon the highways of the State. The defendants answered the complaint and made return to the rule. They alleged, among other things, that it was their purpose to continue to enforce the statutes of the State of South Carolina, which require the plaintiffs, and others who come into the State and engage in business to register and license their automobiles. They further alleged that "the statute under which the plaintiffs were arrested, and which the defendants are attempting to enforce, is a valid criminal statute of the State of South Carolina, and the Court is without jurisdiction to restrain the defendants in its enforcement"; and that the sections of the Code referred to were passed as one entire Act, and that the plaintiffs "cannot accept what they like and reject the part which they do not like, while the two are each mutually dependent upon the other and all qualify the part covered by Section 5896." The additional defense of a condition contained in Section 5897, which the defendants allege to be a "specific condition precedent," was also pleaded. A number of affidavits were filed by both sides in support of their respective contentions.

The matter was heard by Judge Bellinger who, in a very full decree, held that the quoted part of Section 5899 of the

Code was unconstitutional as being an invalid delegation of legislative power, and that the regulation of the department promulgated in pursuance thereof was null and void. He also permanently enjoined the defendants from arresting or interfering with the plaintiffs in the operation of their respective cars upon the highways of the State. From his order, this appeal is taken.

Several questions are raised by the exceptions. A discussion of all of them, however, is not necessary, as the appeal may be disposed of by the decision of the issue whether a Court of equity, under the alleged facts of the case, may properly enjoin the prosecution, or threatened prosecution, of the respondents because of their alleged violation of the South Carolina motor vehicle license laws and the regulation of the State Highway Department defining the term "non-resident."

The rule is thus stated in *Cain v. Daly,* 74 S. C., 480, 55 S. E., 110, 112: "Ordinarily a court of equity has no jurisdiction to restrain criminal proceedings unless such proceedings are instituted by a party to the suit in equity to try the same right to issue before the court of equity. In *re. Sawyer* [124 U. S., 200], 8 S. Ct., 482, 31 L. Ed., 402; *Crighton v. Dahmer,* 70 Miss., 602, 13 So., 237, 21 L. R. A., 84, and note, 35 Am. St. Rep., 666, and note at page 677; 5 Am. & Eng. Dec., in Equity, and citations at page 51. But when the ordinance or statute under which the prosecutions are had is clearly void and irreparable injury to property rights may result for its enforcement, equity may interfere. *Dobbins v. Los Angeles* [195 U. S., 223], 25 S. Ct. [18], 22, 49 L. Ed., 169; *Georgia R. & Banking Co. v. Atlanta* [118 Ga., 486], 45 S. E. [256], 258, following *City of Atlanta v. Gate City Gas Light Co.,* 71 Ga. [106], 126; 16 Ency. Law, 372."

In *Palmetto Golf Club v. Robinson, Sheriff,* 143 S. C., 347, 141 S. E., 610, 616, in reference to the rule as stated, we find: "It will thus be seen that the doctrine recognized

in this state is that a court of equity will only restrain a criminal prosecution when (1) there is a suit pending in equity, (2) in which it is sought to try the same right in issue in the criminal proceeding, and (3) such criminal prosecution is instituted by one party to this pending suit against the other, except (1) when the prosecution is instituted under an ordinance or statute which is clearly void, and (2) irreparable injury to property rights may result from its enforcement."

It is evident from the record before us that, at the time the threats were made by the defendants to prosecute the plaintiffs for their alleged violation of the motor vehicle laws, there was no suit pending in the Court of equity to try any issue between these parties. It follows, therefore, that such proceedings were not instituted by any party to such suit. This being true, our next inquiry is whether the exception to the rule may be invoked to sustain the order of injunction. In the *Palmetto Golf Club case,* with reference to such exception, it was said: "An analysis of the utterance of the court on the question will show that the requirements are twofold; namely, a void ordinance or statute, under which the prosecution is instituted, and irreparable injury to property rights." In that case, Mr. Justice Cothran, in his concurring and dissenting opinion also points out that "where the prosecution is about to be brought under a statute which is either void or unconstitutional, an injunction is proper provided property rights are involved."

Was Judge Bellinger correct in holding that part of Section 5899 above quoted unconstitutional and void as being an invalid delegation of legislative authority, and that the department went so far as to change and add to the statute? The appellants argue strongly against the conclusion reached by him, and contend that the statutes embodying the law as to nonresidence show that the Act of 1930, when it left the hands of the Legislature, was complete in itself, and that the only duty imposed on the State Highway Department, to whom already had been given the making of other rules and

regulations concerning motor vehicle licensing and operating, was to classify those persons who came within the scope of the law, such delegation of power being merely an administrative function of determining the fact of nonresidence for the purposes of the Act.

A similar question, the invalid delegation of legislative authority, was discussed at some length in *State ex rel. Richards v. Moorer,* 152 S. C., 455, 150 S. E., 269, 277, where numerous authorities are cited, and need not be gone into at any great length here. We held in the *Moorer case* that "the Legislature cannot delegate powers which are strictly and exclusively legislative, but that it may delegate to others powers which it may rightfully exercise itself." As has been pointed out, "the difficulty lies, not in determining the governing principle, but in its application to concrete cases." *Crawford v. Johnston,* 177 S. C., 399, 181 S. E., 476, 479.

In *Santee Mills v. Query,* 122 S. C., 158, 115 S. E., 202, 206, the Court said: "It is elementary that, while the Legislature may not delegate its power to make laws, it may vest in administrative officers and bodies a large measure of discretionary authority, especially to make rules and regulations relating to the enforcement of the law."

And in Locke's Appeal, 72 Pa., 491, 13 Am. Rep., 716, quoted with approval in the *Moorer case:* "The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend."

In 6 R. C. L., 165, we find: "One of the most important tests as to whether particular laws amount to an invalid delegation of legislative power is found in the completeness of the statute as it appears when it leaves the hands of the Legislature."

And in 12 C. J., 840: "The Legislature has power, when enacting a statute creating a new right with its remedy, to vest in some board or person power to adjudicate all matters

arising under the statute, and to make such adjudication final and conclusive."

It has been held that the lawmaking body has authority to exercise its police powers by general laws, and to confer upon boards and other agencies authority and discretion to execute these laws, giving to such agencies the power to prescribe rules and impose penalties for their violation. *People ex rel. v. Robertson,* 302 Ill., 422, 134 N. E., 815, 22 A. L. R., 835. Motor vehicles are dangerous instrumentalities and are, therefore, a proper subject of police regulation. *Heslep v. State Highway Department,* 171 S. C., 186, 171 S. E., 913.

An examination of the Act of 1930, Sections 5896-5900 of the Code, convinces us that the claim of the respondents is without merit. In short, applying the foregoing principles to the present case, it is clear that the respondents have failed to sustain the burden cast upon them of showing beyond a reasonable doubt the unconstitutionality of the first sentence of Section 5899, as contended by them. The Act, when read as a whole, is, a completed nonresident statute, and, as insisted by the appellants, merely imposes upon the State Highway Department, the duty of classifying, by a rule or regulation defining the term "nonresident," those persons who come within the scope of the law—an administrative and not a legislative function. Nor do we think, when fairly considered together, that such rule or regulation as was promulgated by the department is in conflict with, or changes in any way, the provisions of Section 5897. That section, as already pointed out, provides when a nonresident owner of a passenger motor vehicle, duly registered in and licensed by another state, shall not be required, for a period of 90 days in any year, to pay the annual license provided by Section 5896 for such motor vehicle, to wit, when such vehicle is not used regularly or periodically in the State for business or commercial purposes. The rule or regulation objected to by the defendants merely defines the

term "nonresident," for the purposes of the Act, to mean, as we have seen, any person, firm, or corporation not engaged in any business, etc., in the State.

In the second place, there is no finding by the Circuit Court as to how the property rights of the respondents would be irreparably injured by the threatened prosecution complained of. Furthermore, no facts are alleged by the plaintiffs or adverted to in their argument, which tend to disclose or to establish just how their property rights would be thus injured from the enforcement of the alleged unconstitutional statute. It seems clear, therefore, that the order of injunction cannot be sustained under the rule itself because of the absence of conditions, as pointed out, upon which the operation of the rule rests; neither can such order be brought under the exception to the rule because of the lack of both of the essential requirements upon which the exception is based, namely, (1) an unconstitutional or void statute, and (2) "irreparable injury to property rights."

For these reasons, the order appealed from is reversed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate.