138 P.2d 1006

**STATE v. PATE.**

No. 4657.

Supreme Court of New Mexico.

March 12, 1943.

Martin A. Threet, Dist. Atty., of Las Cruces, Edward P. Chase, Atty. Gen., and Howard F. Houk, Asst. Atty. Gen., for appellant.

Whatley & Garland, of Las Cruces, for appellee.

MARSHALL, District Judge.

This is an appeal by the state from the judgment of the district court of Dona Ana County, dismissing a criminal complaint against defendant, entered upon the latter's motion to dismiss at the close of all the evidence in the trial de novo of an appeal by defendant from a convic-

tion before the Justice of the Peace of Precinct No. 6 in Dona Ana County, of a violation of L.1941, c. 165, § 1(a).

The portion of the act which the defendant was charged with violating, L.1941, c. 165, § 1(a), reads as follows: "A nonresident owner, except as otherwise provided in this section, owning any foreign vehicle which has been duly registered for the current calendar year in the state, county or other place of which the owner is a resident and which at all times when operated in this state has displayed upon it the number plate or plates issued for such vehicle in the place of residence of such owner, may operate or permit the operation of such vehicle within this state without registering such vehicle or paying any fees to this state, during a period of three months from the time such vehicle is first brought into the state. *Provided, however, a non-resident owner of a vehicle of a type subject to registration in this State, who, while residing in this State, accepts gainful employment within this state shall for the purposes of, and subject to the provisions of this code, be considered a resident of this State.*"

The language of the proviso, which is in italics, was added by amendment in 1941. Prior thereto no distinction was made in the application of this subsection of the act to a nonresident, whether gainfully employed or not. The amendment became effective on April 13, 1941. The evidence disclosed defendant's nonresidence. He arrived in Dona Ana County from Texas on July 4, 1941, driving a four-door Ford sedan of which he was the owner, duly registered and licensed in the state of Texas for the years 1941 and 1942. The defendant was a skilled fruit and canteloupe packer at which occupation he accepted gainful employment in Dona Ana County on July 16, 1941. Having failed and refused thereafter to obtain a New Mexico license for said automobile, as requested by an officer of the State Police, the defendant's arrest, trial before the justice of the peace and conviction followed as aforesaid. He appealed to the district court from the conviction and the ten-dollar fine imposed by the justice of the peace. In the district court when the evidence adduced by both sides was all in, the defendant interposed the following motion, to-wit: ·

"Mr. Garland: Comes now the defendant and moves the Court to dismiss the case against him on the following grounds, to-wit:

"1. The statute or amendment is unconstitutional in that it imposes a burden upon the Defendant and those in his class that is not imposed upon others of the same class, and therefore constitutes unwarranted class legislation because it discriminates in favor of one class of citizens, granting to them privileges and immunities denied others in the same class, in violation of the Fourteenth Amendment of the United States Constitution and in violation of Article 4, Section 26 of the New Mexico Constitution.

"2. The statute or amendment is unconstitutional in that it denies to the Defendant and those in his class the equal protection of the laws guaranteed by the Fourteenth Amendment of the Constitution of the United States and by Article 2, Section 18 of the New Mexico Constitution."

Treating the motion as an interlocutory one to quash a complaint charging facts as disclosed by the evidence, the court sustained the same and entered judgment dismissing the complaint. The state appeals under the authority of 1929 Comp., § 105-2527. The main question presented is whether the act as amended violates the Fourteenth Amendment to the federal constitution and Article 2, § 18 of the State Constitution as denying to the defendant the equal protection of the laws.

▆▆ The State as appellant places chief reliance on the decisions of this court in the cases of Davy v. McNeill, 31 N.M. 7, 240 P. 482, and Hutcheson v. Atherton, 44 N.M. 144, 99 P.2d 462, 465. We think those cases are not decisive. In them we recognized the general rule that in classifying for purposes of legislation the lawmakers are accorded a wide field of choice and that their groupings will not be disturbed merely because the basis adopted therefor may appear to us unreasonable and unjust, if it plausibly could have seemed reasonable to them. The question regarding classification is always, as said in Hutcheson v. Atherton, supra: "Is it so wholly devoid of any

semblance of reason to support it, as to amount to mere caprice, depending on legislative fiat alone for support? If so, it will be stricken down as violating constitutional guaranties. But the fact that the legislature has adopted the classification is entitled to great weight."

▆▆ We recognized, however, that legislative action in this behalf is necessarily subject to judicial review. The cases already cited, as well as the earlier ones of State v. Atchison, T. & S. F. Ry. Co., 20 N.M. 562, 151 P. 305, and McKinley Board of Education v. Tax Commission, 28 N.M. 221, 210 P. 565, 566, so affirm. As said in McKinley Board of Education v. Tax Commission: "The Legislature is not entitled to exercise an arbitrary power of classification. The power must be exercised within the limits of reason and of a necessity more or less pronounced. No definite rule can be laid down as to when classification is or is not justified. The special circumstances of each case govern the decision. The classification 'must be based upon substantial distinctions.'"

▆▆ The test of reasonableness is applied alike whether the legislature be exercising the state's police power or its taxing power. Asher v. Ingels, D.C., 13 F.Supp. 654, and Gaines & Co. v. Holmes, 154 Ga. 344, 144 S.E. 327, 27 A.L.R. 98. Likewise, the distinction imposed should find some reasonable support in or relationship to the purpose of the law.

"Legislative classification to be constitutional must be based upon some sub-

stantial foundation, it may not be arbitrary, it must be germane to the purpose of the law." H. P. Welch Co. v. State, 89 N.H. 428, 199 A. 886, 889, 120 A.L.R. 282. See, also, Commonwealth v. Alden Coal Co., 251 Pa. 134, 96 A. 246, L.R.A. 1916F, 154, and Morf v. Ingels, D.C., 14 F.Supp. 922.

Bearing these considerations in mind, it becomes pertinent to inquire what there is in gainful employment which creates that substantial distinction between the two classes or groups of nonresidents necessary to justify the imposition of the license fee as to the one and its exemption as to the other? We are unable to find a satisfactory answer to the inquiry nor can we see wherein the legislature plausibly could have done so.

As will be seen from the language of this section of the act the unemployed nonresident owning an automobile duly registered for the current year in another state enjoys immunity for three months from registering the same in New Mexico. Whereas, another member of the same general group automatically becomes subject to the requirement of registration upon accepting gainful employment. Conceivably and under the strict letter of the act this could be true of employment for so short a period as a week, or even a single day, occurring at the beginning of a nonresident's three months' sojourn in the state.

The appellee cites instances of the operation of the act on nonresidents of his class to illustrate the hardship, injustice and inequality of the law. They follow from his brief:

"The surgeon for the Crippled Childrens' Hospital at Hot Springs, New Mexico, is a resident of Texas, but drives up to Hot Springs at regular intervals to treat patients at the hospital. He is gainfully employed in New Mexico. He is subject to the amendment.

"A teacher from another state desires to teach at the University of New Mexico or at State College during the summer. He will not be here full three months. No matter how valuable his services may be, if he accepts the position for the brief summer term, he is subject to the act.

"A musical, chautauqua or other educational or cultural troup may be asked to give performances in this state. If they drive their own cars into the State and receive compensation for their services, they are subject to the act.

"A great lecturer may be invited to speak or lecture at some town or institution in the State. If he drives his own car and is paid for his services, he may expect the State Police to cite him to the nearest tag agent.

"A citizen of Texas or some other state may be on his way to Arizona or California and passing through New Mexico. If sickness or some other reason force him to stop en route and work a day or so in New Mexico, he must obtain a license or be punished, even though he intends merely to pass through the State.

"If a doctor or lawyer from another state has but one patient or client in New Mexico, comes into the state in his own car and renders services for compensation to such patient or client, he must obtain a license for his car or be guilty of violating the law."

 Without indicating a view as to whether the act could be successfully invoked as to each supposed case, as to some, at least, it is obvious a good faith administration of the law, would compel efforts, with justifiable expectation of success, to enforce compliance with the law. In the instant case, the appellee entered the state for a short period to pursue his occupation as an expert fruit packer. As is well known, these migratory and seasonal farm workers come yearly at harvest time, pursue their trade or calling and move on. Without their expert assistance an appreciable portion of certain crops likely would perish unharvested. Aside from the fact that hardship to the gainfully employed nonresidents and the resident farmers might result from the application of the act, it would seem from an examination of the act that we have in the instant case an attempt by the legislature to create a class within a class of nonresidents.

"While classification is proper, there must always be uniformity within the class. If persons under the same circumstances and conditions are treated differently, there is discrimination and not classification." See 6 R.C.L. § 370.

Do we not have here a general class, viz. nonresident owners or operators of motor vehicles? And is not this general class arbitrarily divided within itself, by the act of the legislature, when it seeks to impose a license fee on those within the class who are gainfully employed and exempting those within the same class who are not? Such differentiation is discrimination and not classification.

 Seeking a reasonable basis for the classification, although the act does not so state, the Attorney General relates the legislation to the use of the highways, a field in which admittedly the legislature has a broad discretion. It is suggested that perhaps the legislature entertained the thought that a gainfully employed nonresident would use the highways more than other nonresidents. The argument, upon reflection, proves a boomerang. We may notice judicially the fact that the class of nonresident car owners remaining in the state three months, not gainfully employed, is made up largely of tourists drawn to New Mexico by its renowned climate and historic background. Obviously, this type of visitor, on pleasure bent, will make a much more extensive use of our highways than the itinerant worker or other nonresident sojourner whose economic condition may induce the acceptance of gainful employment within a short time following his arrival.

 And it was further suggested by appellant that a gainfully employed nonresident might take away employment from a resident of this state. The courts do not inquire into the motives of the legislature. However, in passing it may be

argued, with some force, that a gainfully employed nonresident contributes the value of his work in return for the compensation he is paid. He contributes service and the expense of his living while he is here in keeping with his economic status, as the tourist contributes money for the benefits that he derives. The nonresident gainfully employed and the nonresident visitor each pays for what he receives even though there is a difference in the medium of payment. It may be assumed that "The laborer is worthy of his hire," and therefore that he contributes his labor in return for his wages and that those who employ him have received value, so that his remuneration does not come within the category of gratuitous benefits. But whether of the one or the other group, all nonresidents become subject to the requirements of the act at the end of a three months' period.

In Asher v. Ingels, D.C., 13 F.Supp. 654, 658, there was before the court for consideration, a California statute which classified used automobiles for purposes of the act. One class comprised secondhand automobiles originating in California. The other embraced secondhand automobiles previously registered in another state. As to the latter, the act imposed a larger registration fee. The court held the act invalid under the Fourteenth Amendment to the federal constitution. Among other things, the opinion states:

"Nevertheless, there must be no arbitrariness or discrimination in the exercise of the power. And courts must, without substituting their judgment for that of the Legislature, be in a position to say that there is an actual relation between the law and the purported objective to be attained.
* * *

"The principle (adverted to by the Attorney General) that the state has the right to determine the condition upon which its roads shall be used has therefore no application here. The state has placed arbitrarily used automobiles into two arbitrary classifications. To one classification comprising automobiles originating in California it applies one rule. To them it grants a transfer for the asking. The other class consists of secondhand automobiles which have previously been registered in another state. Upon them it imposes a larger registration fee. * * *

"Such suppression of competition may be as effective through the exercise of the police power as through the exercise of the taxing power. Both may result in the unlawful erection of barriers between the states. Both may as effectively enthrone that arbitrariness which is a denial of the due process and the equal protection of laws guaranteed by the Fourteenth Amendment. Of the true effect of such provisions, the Supreme Court, in Buck v. Kuykendall, 1925, 267 U.S. 307, 308, 45 S. Ct. 324, 326, 69 L.Ed. 623, 38 A.L.R. 286, has said: 'Its primary purpose is not regulation with a view to safety or to conservation of the highways, *but the prohibition of competition*. It determines, not the manner of use, but the persons by whom

the highways may be used. It prohibits such use to some persons, while permitting it to others for the same purpose and in the same manner.'"

In Sherman Clay & Co. v. Brown, 131 Wash. 679, 231 P. 166, at page 168, a case in which an ordinance requiring the registration of all articles purchased by secondhand dealers except a certain class of them was held unconstitutional as unreasonable class legislation, the Court said: "This case emphasizes a situation which is present in the case at bar, and it might be, as we will see from a citation of subsequent cases, that in the exercise of its regulatory powers, the city might pass an ordinance creating a certain class of persons subject to that regulation, and excluding others from the operation of it, but when, as in the case at bar, it makes a general classification which covers all persons, say, dealing in secondhand goods, it cannot thereafter, without being guilty of discrimination, exempt a part of those of the general class covered by the ordinance from the operation of such ordinance. In other words, as noted in the Macho case [City of Spokane v. Macho, 51 Wash. 322, 98 P. 755, 21 L.R.A.,N.S., 263, 130 Am.St. Rep. 1100], supra, what is attempted to be done here is to exempt a class within a class. Certain kind of secondhand dealers are allowed certain privileges and immunities not granted to the balance, and this without any reasonable distinction between the characters of their businesses."

That is what Chap. 165, L.1941 attempts to do. Nonresidents come within a general classification and prior to the enactment of said act, all were allowed three months' exemption from obtaining a permit to operate their cars on the highways of this State. The act now attempts to exempt a part of those within the general class and force the balance to obtain permits. In other words, taxing a class within a class. This is in contravention of Art. 4, § 26 of the State Constitution.

The rule is stated in 16 C.J.S., Constitutional Law, § 465, p. 925: "* * * Such exemptions, however, must apply to all alike who are of the classes and in the situation included; and if the statute or ordinance granting the exemption has the effect of conferring on certain persons privileges or immunities not granted to other persons similarly situated or not performing similar public services, it is unconstitutional. * * *"

In support of the reasonableness of the classification here challenged, it has been pointed out that a few other states have similar statutes governing the registration of automobiles of nonresident motorists. Admittedly none of these statutes of sister states has been upheld as against the challenge here made, or even tested in the light of it. The existence of these statutes has been given due weight in our consideration of the question presented but the decisive inquiry remains whether reasonable basis exists for the distinction made between the nonresident who does not and him who does, within ninety days after entering the state, accept gainful employment. The

registration fee being for the privilege of using the highways as this Court has held in State v. Ingalls, 18 N.M. 211, 135 P. 1177, it was perfectly natural for the Attorney General to seek to relate it to the use of the highways. The suggestion, however, was not seriously urged in view of the known fact that pleasure seeking tourists make much greater use of our highways than seasonal farm laborers or other migratory workers.

 The only other basis put forward to support the classification is that it has the economic purpose of protecting home labor. However, to be valid the distinction must be germane to the purpose of the law. H. P. Welch Co. v. State, supra; Commonwealth v. Alden Coal Co., supra; Morf v. Ingels, supra. Counsel have not attempted to point out the relationship, if any, existing between the protection of home labor and the use of our highways. We see none. Furthermore, if we assume this economic purpose to be the basis of the classification, in accomplishing such purpose, the Legislature may not override the constitutional guaranty of equal protection to the group of nonresidents aimed at—those accepting gainful employment—in favor of another and privileged group of nonresidents whose economic security is such that they are not compelled to seek employment.

We think the trial court properly sustained the appellee's challenge against the validity of the act as denying equal protection of the law contrary to guaranties found both in the state and federal constitutions. Morf v. Ingels, D.C., 14 F.Supp. 922; People v. Chicago, M. & St. P. Ry. Co., 306 Ill. 486, 138 N.E. 155, 28 A.L.R. 610; Woolf v. Fuller, 87 N.H. 64, 174 A. 193, 94 A.L.R. 1067; People v. Henry, 131 Cal.App. 82, 21 P.2d 672; State v. Cohen, 133 Me. 293, 177 A. 403; Henry Fisher Packing Co. v. Mattox, 262 Ky. 318, 90 S. W.2d 70.

It follows from what has been said that the former opinion herein reached an erroneous result. It and the dissenting opinion directed to it already having been withdrawn, we conclude that the judgment of the lower court should be affirmed.

It is so ordered.

SADLER, MABRY, and BRICE, JJ., concur.

ZINN, C. J., being absent, did not participate.

BICKLEY, Justice (dissenting).

The following propositions are settled on high authority.

The implication always exists that no violation of the constitution has been intended by the legislature. State v. Sargent, 24 N.M. 333, 171 P. 790.

The legislature has a wide range of discrimination in classifying, and where there is some support of taste, policy, difference of situation or the like, even if such reasons may seem to the court to be poor

ones, the Fourteenth Amendment to the Constitution of the United States and corresponding provision of our Constitution are not violated. The question is "could it have seemed reasonable to the legislature even though such basis seems to the court to be unreasonable?" Davy v. McNeill, 31 N.M. 7, 240 P. 482, 486.

It is a well recognized rule in the federal and state courts that the regulation of motor vehicles is an exercise of the police power of the state, and that the state has a right, without being charged with discrimination as against a nonresident, to require all persons who use the highways of that state to comply with its registration laws. Hendrick v. Maryland, 235 U.S. 610, 622, 35 S.Ct. 140, 59 L.Ed. 385; Kane v. New Jersey, 242 U.S. 160, 167, 37 S.Ct. 30, 61 L.Ed. 222.

"And these authorities hold that a state may regulate the use of its highways by any person using them with an automobile, and the fact that it grants certain exemptions to certain classes of citizens in other states or countries does not warrant a person, not coming within that exemption, to complain that it deprives him of equal protection of the law as guaranteed by the Fourteenth Amendment to the Constitution." Bailey v. Smith, D.C., 40 F.2d 958, 959.

The Supreme Court of the United States in Barbier v. Connolly, 113 U.S. 27, 5 S.Ct. 357, 360, 28 L.Ed. 923, decided: "Class legislation, discriminating against some and favoring others, is prohibited; but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment."

Mr. Justice Field in his opinion in that case, pointed out that the Fourteenth Amendments is for the protection of *rights,* and that if no substantial right is invaded, the execution of legislative powers is not obnoxious to any constitutional provision.

Since the nonresident owner of an automobile is not entitled to any immunity from being placed on the same basis as resident owners of automobiles, I am unable to see how he has any "substantial right" which was impaired because the legislature, in carrying out a public purpose, limited the application of the exemption extended to nonresidents by imposing a condition that he should enjoy this exemption only if he did not accept gainful employment in this state while enjoying it.

"Those who seek shelter under an exemption law must present a clear case, free from all doubt, as such laws, being in derogation of the general rule, must be strictly construed against the person claiming the exemption and in favor of the public." 17 R.C.L. p. 522, § 42.

And in Harper v. England, infra [124 Fla. 296, 168 So. 406] it was held: "It is also held that under a registration law, such as that we have under consideration, the collection of a fee for registration is the rule and the exemption is the exception to the rule. Therefore, he who claims

the exemption bears the burden of establishing his right to it. 1 Cooley on Taxation (3d Ed.) 456; Camas Stage Co. v. Kozer, 104 Or. 600, 209 P. 95, 25 A.L.R. 27."

The idea of making a distinction between nonresident owners of automobiles who drive them in states other than the residence of such owners for *pleasure* or for *profit,* is not new. See Cyclopedia of Automobile Law, Huddy, 9th Ed. sec. 159.

Likewise, making the definition of the term "nonresident" to turn upon the circumstance of employment by the driver in gainful occupations is not new. In South Carolina, the legislature provided in 1930, Code 1932, § 5897, for an annual license tax on motor vehicles, and also provided: "For a period of ninety (90) days in any given year no nonresident owner of a passenger motor vehicle duly registered in and licensed by another State shall be required to pay the annual license required by section 5896 for a passenger motor vehicle, except where such vehicle is used regularly or periodically in this State *for business or commercial purposes.*" (Emphasis supplied.)

Another section authorizes the state highway department to promulgate rules and regulations defining any word or term used in the pertinent statutes and that such regulations shall have the full force and effect of law.

Pursuant to the authority given, the department made the following rule or regulation:

"The term 'non-resident,' as used in the sections therein referred to, is hereby defined to mean any person, firm or corporation not engaged in any business, profession, occupation or employment in the State of South Carolina.

"Any person who moves into the State of South Carolina for the purpose of engaging in any business, profession, occupation or employment, immediately becomes a resident of this State and is immediately liable to the State for the payment of regular motor vehicle license fees in case such person operates a motor vehicle in the State, but for administration purposes the motor vehicle division, its officers, and agents, are hereby authorized and directed to allow any such person a period of ten (10) days, without penalty, in which to secure motor vehicle license or licenses."

The Supreme Court of South Carolina in Stovall v. Sawyer, 181 S.C. 379, 187 S.E. 821, held this act constitutional. It is proper to say that the exact constitutional question here involved was not there raised and it is cited as an example of legislation similar to our own.

If we start out with the proposition that resident owners of motor vehicles are to pay the registration fees, then we discover that Chapter 165, § 1(a) Laws 1941, may be considered as establishing a rule of evidence to determine the question of residence, similarly, as it was done in South Carolina, Florida and Kentucky.

Another example may be found by reading Harper v. England, 124 Fla. 296, 168

So. 403, where the Supreme Court of Florida discusses the Florida statutes. It seems that an enactment of 1917, as amended in 1925 and in 1927, declared that the provisions of the registration act should not apply to a motor vehicle owned by a non-resident of the State provided that he had complied with the laws of the state of his residence relative to motor vehicles, and then provided: "But such exemption shall not apply to motor vehicles operated for hire." Comp.Gen.Laws Fla.1927, § 1293.

It would be difficult to assume that using an automobile for hire was any more detrimental to the highways than the use of such vehicle for pleasure. Yet one may easily conjecture that a state such as Florida with its many attractions to tourists and pleasure seekers could discover a reason for making a distinction between pleasure driving and driving for hire. A little later in 1933, the Florida legislature enacted the following statute:

"The provisions of law authorizing the operation of motor vehicles over the highways of the State of Florida by non-residents of this State when such vehicles shall be duly registered or licensed under the laws of some other State or foreign country, shall not apply to any non-resident who shall accept employment or engage in any trade, profession or occupation in this State. In every case where a non-resident shall accept employment or engage in any trade, profession or occupation in the State of Florida, such non-resident shall be required to register his motor vehicles

in this State if such motor vehicles are proposed to be operated on the highways of the State of Florida." Laws Fla.1933, c. 16085, § 3(17).

Diligent search does not disclose that this Florida enactment of 1933 has been questioned on constitutional grounds. However, the Attorney General of Florida rendered an opinion appearing at page 554 of Biennial Report of the Attorney General, 1937–1938 in which he said: "The above statutory provision quite obviously was enacted for the purpose of requiring winter tourists to pay a license tax for operating their motor vehicles on the highways of the State if they were in competition with citizens of Florida for available employment in the State. To put the matter plainly, if a non-resident comes to Florida and obtains employment that might otherwise be available for a resident then the law requires such non-resident to obtain a Florida license tag for his automobile."

It thus appears that the suggested reason for the classification has found lodgement in minds of others than the appellant and the writer of this opinion. I agree with the Attorney General of Florida that it is obvious.

Even before the amendment of the Florida statute, the Supreme Court of Florida had ruled that the otherwise resident of another state became a resident of Florida, within the intent and meaning of the earlier statute, by reason of the fact that he was employed in the canning industry in Flori-

da for approximately five months in each year. Robinson v. Fix, 113 Fla. 151, 151 So. 512.

An ordinance of the City of Paducah imposing a license tax on persons operating automobiles therein *including nonresidents using automobiles as means of conveyance to and from work in the city,* was held to be valid as against contention that such classification was unreasonable, discriminatory or lacking in uniformity. See Johnson v. City of Paducah, 285 Ky. 294, 147 S.W.2d 721.

In State v. Zimmerman, 181 Wis. 552, 561, 196 N.W. 848, it was decided that the taxing of the automobile used for strictly private purposes is a tax upon the privilege of using the highways of the state, while the tax upon the owner of a motor vehicle by a person gainfully employed may be considered not only a tax upon the privilege of using the highways, but also a tax upon the occupation of one so engaged.

Now, as to the statutes of other states, more or less similar in purpose to our own and which do not appear to have been the subject of litigation:

Colorado Code 1935, vol. 2, Chapter 16, § 115. Usual exemptions of foreign licensed automobiles, but exemption shall not apply where nonresident is engaged in business in Colorado and operates car in said business.

Revised Code of Delaware 1935, § 5540 et seq., similar to Colorado. Georgia Code 1933, § 68-221, exempts foreign licensed cars for thirty days and then declares: "Provided, no resident shall be allowed to operate a motor vehicle within this State under a license issued by another State."

Idaho Code Annotated 1932, § 48-120, (Act of 1927)—Exemptions for nonresidents similar to New Mexico, but provides: "Any transient person or resident of another state sojourning within the state of Idaho for a period of more than sixty days and engaged during that period in a gainful occupation shall for the purposes of this chapter, be classed as a resident of this state."

Louisiana General Statutes 1932, § 5174. Usual exemptions for foreign vehicles are provided, followed with the provision: "Every nonresident person, regularly employed in or carrying on a business within this state and owning and regularly operating, in such business or in connection therewith, any motor vehicle, trailer or semitrailer within this state, shall be required to register each vehicle and pay the same license taxes therefor as is required with reference to like vehicles owned by residents of this state." (Acts 1932 No. 20, § 20.)

Revised Statutes of Maine, 1930, page 574, c. 29, § 40. Exempts foreign cars from registration or license fee if not used for hire.

Compiled Laws of Michigan 1929, § 4643, exempts resident owners of motor vehicles owned and operated by persons

who have paid license fee in other states, etc. and then provides: "This exemption, however, shall not apply to pleasure vehicles operating within this state for a period exceeding ninety (90) days and to commercial vehicles operating within this state for a period exceeding ten (10) days, and in no case where the owner of such motor vehicle is a resident of the state of Michigan."

Mason's Minnesota Statutes, 1927, § 2684-1 limits exemptions of foreign motor vehicles to owners who are citizens of states or Canadian provinces *adjoining* Minnesota. Then by amendments of 1927, 1931 or 1935, Mason's Minn.St.Supp.1936, § 2684-6, it is provided: "Every non-resident * * * carrying on business within this State and owning and regularly operating in such business any motor vehicle within this State shall be required to register each such vehicle and pay the same tax and penalties, if any, therefor, as is required with reference to like vehicles owned by residents of Minnesota."

Mississippi Code, 1930, § 5616—Exemption of nonresident owners of motor vehicles who shall have paid registration fee elsewhere and providing that the exemption "shall not apply to any motor vehicle, trailer or semi-trailer operated within this state for the transportation of persons for hire or of property for hire *or otherwise.*"

Revised Codes of Montana, 1935, contains the usual exemption of foreign licensed motor vehicle. Then in 1929 (See Code, § 1760.7) it was provided: "Before any foreign licensed motor vehicle shall be operated on the highways of this state for compensation or profit, *or* the owner thereof is using the vehicle while engaged in gainful occupation or business enterprise, in the state of Montana, including highway work, the same shall be registered and licensed in this state in the same manner as is required in the case of domestic owned vehicles of similar character not heretofore registered or licensed," etc.

Nevada Compiled Laws, Supp.1931–1941, § 4435.16, has the usual exemptions for foreign licensed vehicles but provides: "A nonresident owner of a vehicle of a type subject to registration in this state who, while residing in this state, accepts gainful employment within this state shall for the purposes of and subject to the provisions of this act be considered a resident of this state and pay such registration fees as provided for in this act."

Oklahoma Statutes 1941, Title 47, § 22.12. This refers to acts of 1941, page 185, § 13. It refers to nonresidents, registration, etc., and after providing exemptions to foreign licensed cars, concludes: "Provided also, such foreign vehicle owned by a non-resident person shall not be required to be registered in this State unless being used in the furtherance of a commercial or industrial enterprise."

Oregon Compiled Laws Annotated, 1940, vol. 8, § 115-132. This Oregon statute is rather elaborate and reflects, according to the footnotes, amendments in 1923, 1927,

1929, 1931, 1933 and 1935. In brief the provisions are that nonresident owner of a motor vehicle licensed in another state shall, not later than 24 hours after commencing to operate on any highway in Oregon, apply to the Secretary of State or other agency which has been designated by the Secretary of State, for a permit. It is then provided that upon the receipt of said application the Secretary of State, if satisfied of certain facts including a showing by the applicant "That he has not and is not engaged in any gainful employment in this state" a permit will be issued, etc.

In still other states, the classification is made to turn on the use of the nonresident car in connection with the nonresident's occupation in the state.

It will be noticed that the language is varied and it would be rather difficult to say that if a nonresident has accepted gainful employment in the state and uses his automobile even for nothing more than driving to and from his work, he is not operating it in furtherance of his employment or in connection with his employment.

The value of this research and citations as a result thereof is to emphasize that when so many states of the Union have followed the same policy of classification as did the New Mexico Legislature without drawing a challenge on constitutional grounds, our court should avoid a conclusion that such classification is entirely without reason and is arbitrary and capricious, and therefore offensive to the Fourteenth Amendment.

Seeking a basis for the classification which may have seemed reasonable to our legislature of 1941 (and the legislatures of Kentucky, South Carolina, Florida, and other states mentioned supra) it may be judicially noticed that the class of nonresident owners of automobiles remaining in the state for three months and not gainfully employed is made up largely of tourists drawn to New Mexico by its renowned climate and historic background. This class are usually free spenders and it may be that the legislature thought this circumstance would compensate for the loss of license fees. If the concession to use the highways of the state by this class for three months without contributing through payment of license fees may have been thought by the legislature to be reasonable, I am unable to say that the curtailment of the concession in case the visitors enter into competition with the resident toiler is unreasonable. It has been suggested on behalf of appellee that an enforcement of the act may keep seasonal labor from coming here in time of need to pick the cotton and the cantaloupe. On the other hand it has been suggested that the theory of restrictions in the form of tariffs and license fees to supposedly protect home markets and home laborers, has much support. The arguments pro and con on these respective theories of economic advantage are many and they are vigorously waged. That it had seemed reasonable to the legislatures of South

Carolina, Florida, Kentucky, Idaho, Louisiana, Minnesota, Montana, Nevada, Oregon and other states to base a distinction as between nonresidents who entered the state upon pleasure bent and those who came to enter into competition with home labor and local business, affords support to our legislature of 1941, in making a similar distinction. At any rate, the idea was not new in 1941 and our legislature doubtless weighed the economic advantages and acted with deliberation and advisedly.

I do not aspire to substitute my judgment for that of the legislature. Being convinced that the Act *could* "have seemed reasonable to the *legislature*" precision requires that I do not concur in what appears to me an intrusion upon the legislative department. I dissent.