414 P.2d 675

COMMUNITY PUBLIC SERVICE COMPANY, Petitioner-Appellant,

v.

The NEW MEXICO PUBLIC SERVICE COMMISSION, and Joseph A. Bursey, Phil Lucero and L. J. Chambard, Commissioners, and Otero County Electric Cooperative, Inc., Respondents-Appellees.

No. 7739.

Supreme Court of New Mexico.

March 21, 1966.

Rehearing Denied June 1, 1966.

Atwood & Malone, Bob F. Turner, Roswell, Alfred P. Whittaker, Rockville, Md., and Bennett L. Smith, Ft. Worth, Tex., Gen. Counsel for Public Service Co., appellant.

Boston E. Witt, Atty. Gen., John Jennings, Sp. Asst. Atty. Gen., Santa Fe, for N. M. Public Service Comm.

William M. Siegenthaler, Artesia, John E. Hall, Albuquerque, for Otero County Elec. Coop.

MOISE, Justice.

We are here called upon to pass on the constitutionality of Ch. 89, N.M.S.L.1961, insofar as it attempted to place rural elec-

tric cooperatives under the Public Utility Act for certain purposes by including them within the definition of "public utility." The act amended § 68–3–2(F) (1) by adding the italicized words:

"'Public utility' or 'utility' means every person not engaged solely in interstate business and except as hereinafter stated, that now does or hereafter may own, operate, lease or control:

(1) Any plant, property, or facility for the generation, transmission, or distribution, sale or furnishing to or for the public of electricity for light, heat, or power or other uses, *including corporations organized under sections 45–4–1 through 45–4–32 New Mexico Statutes Annotated, 1953 Compilation; known as the Rural Electric Co-operative Act;* * * *."

At the same time nothing was done to change § 45–4–3(d), N.M.S.A.1953, which reads:

"A cooperative shall have power: * * *

(d) To generate, manufacture, purchase, acquire, accumulate and transmit electric energy, and to distribute, sell, supply, and dispose of electric energy in rural areas to its members, to governmental agencies and political subdivisions, and to other persons not in excess of ten per centum (10%) of the number of its members; * * *."

Petitioner, hereinafter referred to as "Community" is a public utility within the definition of that term in § 68–3–2(F), N.M.S.A.1953, prior to its amendment in 1961. Respondent, Otero County Electric Cooperative, Inc., hereinafter referred to as "Otero," is a corporation organized under the Rural Electric Cooperative Act (§§ 45–4–1 to 45–4–32, N.M.S.A.1953) and holds a certificate of convenience and necessity issued pursuant to § 68–7–1.1, N.M.S.A. 1953. Respondent, The New Mexico Public Service Commission, hereinafter referred to as "Commission," was established by § 68–4–1, N.M.S.A.1953.

Community here appeals from a district court judgment affirming an order of the Commission in a proceeding under §§ 68–9–1 to 68–9–5, N.M.S.A.1953, wherein the Commission granted a certificate of public convenience and necessity to Otero to serve the Sun Valley Subdivision near Alto, New Mexico. Community timely raised the constitutional issues, and here appeals from the decision of the trial court upholding the statute. It argues that the 1961 amendment is void because it constitutes an arbitrary and unreasonable classification. It asserts that this is so because cooperatives are included under the Act though not required to render service to the general public and no provision is made for complete regulation of rates charged by them (§ 68–5–4.1, N.M.S.A.1953) or securities issued by them (§ 68–5–8, N.M.S.A.1953), whereas

Community must render service to the public generally and its rates and financing are completely supervised and controlled. On the other hand, Otero is here asserting that it is a public utility and accordingly entitled to the protection of the act; and, further, that the special privileges accorded in §§ 68–5–4.1 and 68–5–8, supra, are based upon a reasonable classification.

In Socorro Electric Coop., Inc. v. Public Service Co., 66 N.M. 343, 348 P.2d 88, we held that an electric cooperative was not open for the use and service of all the members of the public who might require it, and that therefore, a cooperative could not be a public utility. See Llano, Inc. v. Southern Union Gas Co., 75 N.M. 7, 399 P.2d 646. In the light of this decision, it seems fairly evident that by Ch. 89, N.M.S.L.1961, and particularly by the amendment to § 68–3–2 (F) (1), supra, it was the purpose of the legislature to overrule this court and make rural electric cooperatives into public utilities. That the legislature could accomplish this purpose, Community does not question. However, it does assert that it could not be done in the manner attempted, and that the act is unconstitutional for the reasons set out above.

One recent decision of this court should be noticed. In Edington v. New Mexico Public Service Commission, 74 N.M. 647, 397 P.2d 300, we reviewed the history of the Public Utility Act down to and including the 1961 amendment. Concerning the claim of denial of equal protection of the law raised by Edington, we determined that no complaint would be heard since before the 1961 amendment the Commission had no jurisdiction of the cooperative or of its rates where there was an overlap between its service and that of Edington whereas, subsequent thereto, the Commission did have power to fix rates of both when there was an overlapping or conflicting certificate of convenience and necessity and, consequently, Edington could not possibly have been adversely affected by the amendment.

In the instant case, a direct conflict between the rights and privileges of Community and Otero under § 68–7–1, supra, presents itself. This would not occur if Otero were not a public utility. Further, the Commission specifically found that, "Otero's rates are fixed by its Board of Trustees and are not subject to regulation by the Public Service Commission." These characteristics distinguish this case from Edington, and out of these differences the right to question the constitutionality of the amendment results.

While we recognize that absolutely equal treatment of parties performing similar service is not demanded in order for a legislative act to withstand an attack on its constitutionality, Dominion Hotel v. State of Arizona, 249 U.S. 265, 39 S.Ct. 273, 63 L.Ed. 597; Gruschus v. Bureau of Revenue, 74 N.M. 775, 399 P.2d 105, it is nevertheless imperative that where classifi-

cation is attempted, the same must be reasonable and based on real differences bearing a proper relationship to the classification, and there must be uniformity of treatment within each class. State v. Pate, 47 N.M. 182, 138 P.2d 1006; Burch v. Foy, 62 N.M. 219, 308 P.2d 199.

■ The amendment to the definitions in § 68–3–2, supra, would make Otero a public utility, along with Community. Because of this change in the law, there arose a duty not previously present under § 68–7–1, supra, for Community to obtain a permit before undertaking the construction here in question. However, this is not all. Whereas Community thereby had new restrictions placed upon it, Otero was still not made subject to the same regulation and control which Community was under, as provided in § 68–5–4.1, supra, nor does it have the duty to serve the public generally. As a matter of fact, by the terms of its charter, issued under § 45–4–3(d), supra, its power to serve persons other than its members, governmental agencies and political subdivisions is limited to a number not in excess of 10% of the number of its members. Section 68–5–4.1, supra, denies the Commission jurisdiction over rates of cooperatives such as Otero "except in any territory in which an overlapping or conflicting certificate of convenience and necessity has been issued to and exercised by any other public utility for the same class of service * * *." At the same time, the Commission has "general and exclusive power and jurisdiction to regulate and supervise * * * rates and service regulations * * *" of Community. § 68–5–4, N.M.S.A.1953.

Can we say that the different treatment accorded a utility such as Community under the law from that accorded Otero is reasonable and based upon real differences in the two companies? In answering the question, we repeat that both are "public utilities" under the definition of § 68–3–2 (F), supra. When we consider the additional facts that under its charter Otero does not and cannot serve the public generally and does not have its rates controlled except in overlapping situations, we cannot escape the conclusion that by comparison with Community it is at a decided advantage. This is what is prohibited by the Fourteenth Amendment to the Constitution of the United States, and by Art. II, § 18, of the Constitution of New Mexico.

Under the facts of this case, insofar as Community seeks to serve the public and Otero seeks to serve customers who are not members, they are both attempting to secure business out of which they can make a profit. We are convinced that there is no real basis for applying one set of rules to one and a different set to the other. This is not permitted under the Constitution of the United States. Frost v. Corporation Commission, 278 U.S. 515, 49 S.Ct. 235, 73 L. Ed. 483. The equal protection clause pro-

tects against "invidious discrimination." To our minds, the invidious discrimination present in the legislation under consideration is too apparent to require elaboration. See Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485.

In the statute considered here, we can perceive of no supportable or rational basis for permitting an electric cooperative such as Otero to serve selected individuals who are not members of the cooperative (it does not have to serve the public generally and may not serve in excess of 10% of the number of its members) with entire freedom from control of its rates (except in overlapping situations not here present) while at the same time Community, when serving the same individuals, is required to charge for such service only such rates as the Commission approves.

The following, quoted from Frost v. Corporation Commission, supra, is pertinent:

"* * * A corporation organized under the act of 1919, however, has capital stock, which, up to a certain amount, may be subscribed for by any person, firm or corporation; is allowed to do business for others; to make profits and declare dividends, not exceeding 8 per cent. per annum; and to apportion the remainder of its earnings among its members ratably upon the amount of products sold by them to the corporation. Such

a corporation is in no sense a mutual association. Like its individual competitor, it does business with the general public for the sole purpose of making money. Its members need not even be cotton growers. They may be—all or any of them—bankers or merchants or capitalists having no interest in the business differing in any respect from that of the members of an ordinary corporation. The differences relied upon to justify the classification are, for that purpose, without substance. The provision for paying a portion of the profits to members or, if so determined, to nonmembers, based upon the amounts of their sales to or purchases from the corporation, is a device which, without special statutory authority, may be and often is resorted to by ordinary corporations for the purpose of securing business. As a basis for the classification attempted, it lacks both relevancy and substance. Stripped of immaterial distinctions and reduced to its ultimate effect, the proviso, as here construed and applied, baldly creates one rule for a natural person and a different and contrary rule for an artificial person, notwithstanding the fact that both are doing the same business with the general public and to the same end, namely, that of reaping profits. That is to say, it produces a classification which subjects one to the burden of showing a public necessity for his business, from which it

relieves the other, and is essentially arbitrary, because based upon no real or substantial differences having reasonable relation to the subject dealt with by the legislation. Power [Mfg.] Co. v. Saunders, 274 U.S. 490, 493, 47 S.Ct. 678, 71 L.Ed. 1165, 1167; Louisville Gas & Electric Co. v. Coleman, supra, 277 U.S. [32], 39, 48 S.Ct. 423, 72 L.Ed. 770, 774; Quaker City Cab Co. v. [Com. of] Penna., supra, 277 U.S. 389, 402, 48 S.Ct. 553, 72 L.Ed. [927] 930." (278 U.S. 515, 524, 49 S.Ct. 235, 238).

See also, Chickasha Cotton Oil Company v. Cotton County Gin Company (C.A. 10, 1930) 40 F.2d 846, 74 A.L.R. 1070.

The language of this court in State v. Thompson, 57 N.M. 459, 463, 260 P.2d 370, fully recognizes this rule under both the Constitutions of the United States and of New Mexico.

"The equal protection of the Fourteenth Amendment of the Constitution of the United States and Article 2, Section 18 of the State Constitution have for all practical purposes the same effect. They constitute a guaranty that all persons subject to state legislation shall be treated alike under similar circumstances and conditions in privileges conferred and liabilities imposed. * * *"

See also, State v. Sunset Ditch Co., 48 N.M. 17, 145 P.2d 219.

We have concluded that the amendments to our public utility law discussed here are discriminatory and deny to Community the equal protection of the laws and are violative of the Fourteenth Amendment of the United States Constitution, and of Art. II, § 18, of the New Mexico Constitution. This result has not been reached without full consideration of the oft-repeated rule that legislative acts are presumptively valid and that this court should not hold otherwise on constitutional grounds without being clearly satisfied that no other conclusion can reasonably be reached. State ex rel. Dickson v. Saiz, 62 N.M. 227, 308 P.2d 205; State ex rel. Hannah v. Armijo, 38 N.M. 73, 28 P.2d 511.

Having concluded that the questioned legislation must be held invalid as violative of the Constitutions in the manner hereinabove discussed, it is not necessary for us to consider the additional grounds of unconstitutionality argued by Community in its brief.

The district court having arrived at an erroneous conclusion, its judgment is reversed and the cause remanded with instructions to proceed in a manner consistent herewith.

It is so ordered.

CARMODY, C. J., and CHAVEZ, NOBLE, and COMPTON, JJ., concur.