2005-NMCA-022

106 P.3d 1273

Joe CRUTCHFIELD, individually, and Crutchfield Enterprises, Inc., d/b/a Gasearch Energy Intelligence, Plaintiffs–Appellants,

v.

NEW MEXICO DEPARTMENT OF TAXATION AND REVENUE, Defendant–Appellee.

No. 23,550.

Court of Appeals of New Mexico.

Dec. 27, 2004.

**28**

Peter J. Gould, Santa Fe, NM, for Appellants.

Peter Breen, Special Assistant Attorney General, Santa Fe, NM, for Appellee.

## OPINION

SUTIN, Judge.

{1} This appeal raises an issue of the State's duty under public records statutes to provide an electronic database to a commercial user, butting two statutory policies relating to a citizen's access to public records against one another and requiring this Court to wrestle with whether the State can protect its interests by setting conditions and charging a royalty for use of its electronic database.

{2} Appellants Joe Crutchfield and Crutchfield Enterprises, Inc., d/b/a GA-Search Energy Intelligence (together, Crutchfield) appeal the district court's denial of their petition for a writ of mandamus to enforce provisions of the Inspection of Public Records Act (the IPRA), NMSA 1978, §§ 14-2-1 to -12 (1947, as amended through 2003). Crutchfield sought a writ of mandamus, pursuant to Section 14-2-12 of the IPRA, to obtain certain records relating to severance taxes paid on oil and gas wells located in New Mexico. The key request was for complete electronic copies of the New Mexico Department of Taxation and Revenue's (the Department's) severance tax database and any updates or corrections to that database. With the records requested, Crutchfield intended to create a commercial information database product for purchase and use by the oil and gas industry. The Department would not provide the database.

{3} In denying Crutchfield a writ of mandamus, the district court concluded that Crutchfield's request was governed by NMSA 1978, § 14-3-15.1(C)(1)-(5) (1995) of the Public Records Act (PRA), NMSA 1978, §§ 14-3-1 to -23 (1959, as amended through 2002), and not the IPRA. Section 14-3-15.1(C) essentially provides that a computerized database of a public record may be provided for a commercial purpose under certain conditions, including the user's agreement "to pay a royalty or other consideration to the state as may be agreed upon by the state agency that created the database." § 14-3-15.1(C)(5). We agree with the district court and affirm.

## BACKGROUND

{4} Crutchfield operates a business in Texas that provides information on a monthly basis by way of electronic or CD-rom service to paying subscribers in several states. The information consists of oil and gas pricing, well output, taxation, and other information. Following unsuccessful negotiations between Crutchfield and the Department, Crutchfield made an IPRA request for records relating to all oil and gas wells located in New Mexico. *See* § 14-2-8 (setting out procedure under IPRA for requesting records). Certain requests sought electronic copies of the complete severance tax database, including updates and corrections to the database, and sought this data continuously and on a monthly basis.

{5} The Department's response rejected the requests for the database and continuing updates. The Department relied for its rejection on Section 14-3-15.1(C)(1), (2), (4), and (5). Section 14-3-15.1(C) states:

C. The state agency that has inserted data in a database may authorize a copy to

be made of a computer tape or other medium containing a computerized database of a public record for any person if the person agrees:

(1) not to make unauthorized copies of the database;

(2) not to use the database for any political or commercial purpose unless the purpose and use is approved in writing by the state agency that created the database;

(3) not to use the database for solicitation or advertisement when the database contains the name, address or telephone number of any person unless such use is otherwise specifically authorized by law;

(4) not to allow access to the database by any other person unless the use is approved in writing by the state agency that created the database; and

(5) to pay a royalty or other consideration to the state as may be agreed upon by the state agency that created the database.

In addition, the Department stated: "Rather than seeking to find a commercial vendor for such information, the [Department] elects to keep this information free. Much of the information is already available at our website. We anticipate making more information available there as our budget[ ] allows." The Department's public position was that it sought to provide information it chose to release in an electronic format available, free of charge, on its own website.

{6} Crutchfield was unwilling to pay royalties to the Department and the Department was unwilling to enter into a licensing agreement with Crutchfield. Crutchfield was not satisfied with obtaining information from the Department's website because, from Crutchfield's own search of the website that contained data from the State's ONGARD computer system, Crutchfield concluded that "the website must be searched one Production Unit Number (PUN) at a time and the data processed by the State's software delivers only one PUN at a time." He also concluded that "the ONGARD System website would not allow the user to have comprehensive access to the complete severance tax databases as [Crutchfield] has requested." Further, using the ONGARD system on the website was burdensome in that Crutchfield was able to search only "20 PUNs" at a time, and there were "20,000 PUNs" in New Mexico. The information on the website was less complete than the database that Crutchfield requested. Crutchfield wanted to receive more complete information, much more quickly, by way of electronic transfer of the entire database, thereby making his product saleable in a timely manner.

{7} The district court determined that, while the records requested were public records, the format in which the records were requested and the frequency with which they were requested to be supplied "separate[d] them from the broader application of [the IPRA]." Were Crutchfield to have been satisfied with the information in typed or printed format, the court found, Crutchfield could have received the information upon the payment of a reasonable fee for the service. *See* § 14–3–15.1(A) (providing for release of information contained in information systems databases, in printed or typed format, upon the payment of a reasonable fee for the service). "[Crutchfield], however, specifically requested a computer tape, microdisk, ZIP disk, or CD rom transfer of the database," and, therefore, the court determined that Section 14–3–15.1(C), which authorizes "a copy to be made of . . . a computerized database," applied.

{8} Among its findings, the court noted that Crutchfield and the Department appeared to have been on different tracks up to the time of the hearing on Crutchfield's petition in regard to what Crutchfield was actually requesting. The court thought that the testimony at the hearing indicated there had been confusion about the format of the database requested. According to the court, until the hearing on Crutchfield's petition, the Department thought Crutchfield wanted a collated database which would have required the Department to create a record that did not exist. The court found that apparently, even with the confusion cleared up, the Department was concerned about its cost in providing voluminous records electronically on a continuous monthly basis, estimated at

$20,000 per year for collated data and estimated to be less for uncollated data, which would require several hours each month in computer and employee time. The court further found that the Department "was unwilling to pass the cost onto the taxpayers in order to subsidize [Crutchfield's] business venture."

{9} After concluding that Crutchfield's request was governed by Section 14–3–15.1(C) and its subdivisions, the court further concluded that, pursuant to that section, the Department had "no duty to produce the computer database records in electronic format" as Crutchfield requested because neither party was willing to enter into an agreement as set forth in the statute. The court also concluded that the Department was not in violation of the PRA for failure to produce public records.

{10} The only other issue for the court to decide was related to Crutchfield's request seeking descriptions of the abbreviations and terms used by the Department in categorizing and sorting the severance tax data on its electronic database. The court concluded that the information requested was not a public record and therefore not subject to the application of "the Statute."

{11} Based on its findings and conclusions, the court denied Crutchfield's petition for writ of mandamus. Crutchfield asserts five points for reversal, namely, that the district court erred: (1) in failing to consider the constitutionality of Section 14–3–15.1(C)(1), (2), (4), and (5); (2) in determining that the limitations in that section "trumped the open access provisions of the [IPRA]"; (3) in failing to find that the Department waived its right to impose the conditions in that section on Crutchfield; (4) in refusing to sanction the Department; and (5) in determining that Crutchfield's request for a description of abbreviations and terms was not a records request.

## PRELIMINARY MATTERS: The Constitutional Issue

{12} For preservation of the constitutional issue below, Crutchfield cites to the petition and accompanying memorandum of law. Crutchfield's petition asserted that the authority in Section 14–3–15.1(C)(2) to determine allowable commercial uses "must be balanced against a policy of openness ... and [Crutchfield's] constitutional free speech rights." The petition also stated that the Department's action denied him "his constitutional right to produce a lawful, commercial information product." Crutchfield's memorandum of law states the same, and presents an argument relating to constitutional protection of commercial speech under the First Amendment and under Article II, Section 17 of the New Mexico Constitution. In seeking a writ of mandamus in those court-filed documents, Crutchfield sought court evaluation of the Department's right to limit commercial speech balanced against the underlying policy of the IPRA and Crutchfield's right to engage in lawful commercial speech. In neither document, however, did Crutchfield expressly and directly seek a declaration that the statute was unconstitutional. Nor did Crutchfield raise the constitutionality of the statute at the hearing on whether to grant an alternative writ. Further, at the hearing, Crutchfield did not ask the court to determine application of the statute to be unconstitutional. Moreover, Crutchfield did not raise the constitutional issue or make any mention of the First Amendment or New Mexico's Constitution in his written closing argument or in his requested findings of fact and conclusions of law. Further, in his argument on appeal, while Crutchfield says he "restates" his argument that Section 14–3–15.1(C) is "unconstitutional as applied," he does not show where in the record he invoked a ruling of the court on the issue. The Department asserts that Crutchfield's constitutional argument should be rejected because Crutchfield sought documents solely under the IPRA and cannot use the IPRA as a vehicle for review of Section 14–3–15.1(C), and also because Crutchfield failed below to litigate and make a record on the legality of the Department's discretionary refusal under Section 14–3–15.1(C) to license the database.

{13} The New Mexico Foundation for Open Government (the Foundation) filed an amicus curiae brief in this appeal. In its amicus brief, the Foundation attacks the statute as an unconstitutional prior restraint

and as unconstitutionally vague, in addition to attacking subsection (C)(2) as unconstitutionally infringing on commercial and political speech rights. The Department asks this Court to refuse amicus status to the Foundation or, alternatively, to strike the Foundation's void for vagueness point.

{14} We determine that the constitutionality of Section 14–3–15.1(C) or of any particular subsection of that statute is not an issue we should address in this appeal. Crutchfield did not invoke a ruling of the district court on or otherwise adequately preserve for review the issue of whether Section 14–3–15.1(C) or any of its subsections should be declared unconstitutional on their face or as applied. To preserve error for review, a party must fairly invoke a ruling of the district court on the same grounds argued in this Court. *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App. 1987). Such preservation allows the district court an opportunity to correct error, thereby avoiding the need for appeal, at the same time creating a record from which the appellate court can make an informed decision. *Diversey Corp. v. Chem–Source Corp.*, 1998–NMCA–112, ¶ 38, 125 N.M. 748, 965 P.2d 332. Thus, on appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue. *In re Estate of Heeter*, 113 N.M. 691, 694, 831 P.2d 990, 993 (Ct.App.1992) (stating that this Court will not search the record when a party fails to provide citations).

{15} Further, the Foundation will not be permitted to participate as amicus curiae and its briefs will not be considered. Even were we to stretch and interpret Crutchfield's position before the district court to have raised and invoked a ruling on an issue of the constitutionality of Section 14–3–15.1(C), that issue was not whether the statute is an unconstitutional prior restraint, unconstitutionally vague, or otherwise unconstitutional on its face. The Foundation raised issues that were not raised below even in Crutchfield's petition and memorandum of law. Amicus must accept the case before the reviewing court as it stands on appeal, with

the issues as framed by the parties, and foregoing presentation of issues under the deficit of lack of preservation. *See Nall v. Baca*, 95 N.M. 783, 785–86, 626 P.2d 1280, 1282–83 (1980); *State v. Eder*, 103 N.M. 211, 215, 704 P.2d 465, 469 (Ct.App.1985).

## DISCUSSION
### A. The Application of Section 14–3–15.1

#### Standard of Review

{16} Crutchfield and the Department each fails to advise us of the applicable standard of review. *See* Rule 12–213(A)(4), (B) NMRA. Crutchfield's database request issue involves statutory interpretation and application of law to facts. Interpretation of statutes and their application to facts require de novo review. *See Cooper v. Chevron U.S.A., Inc.*, 2002–NMSC–020, ¶ 16, 132 N.M. 382, 49 P.3d 61; *Morgan Keegan Mortgage Co. v. Candelaria*, 1998–NMCA–008, ¶ 5, 124 N.M. 405, 951 P.2d 1066.

{17} The court found "[i]t is undisputed that [Crutchfield] is unwilling to pay royalties." In argument, Crutchfield asserts that this finding contains a factual misstatement, which he characterizes as a "critical error in the Court's ruling as it is used to justify the Department's refusal 'to enter into a licensing agreement' with [Crutchfield]." To support his point, Crutchfield states that he has not stated he is "unwilling to pay royalties under any circumstances," but has stated rather that he is "unwilling to [be] singled out for discriminatory treatment." Crutchfield is essentially saying that he may have been willing to pay a royalty but for the discriminatory treatment, and that the court's finding was not a complete recitation of Crutchfield's position. Crutchfield has not launched an appropriate attack on the district court's finding. Crutchfield does not appeal on the ground that any of the court's findings of fact was unsupported by substantial evidence. Nor does he attack any finding under the procedure required in Rule 12–213(A)(4). Crutchfield fails to connect and support his argument with a recitation of all facts material to the issue. Crutchfield fails to assert any substantial evidence standard of review. Where an appellant fails to "in-

clude the substance of all the evidence bearing upon a proposition," this Court will not consider a sufficiency of the evidence challenge. *Martinez v. Southwest Landfills, Inc.*, 115 N.M. 181, 186, 848 P.2d 1108, 1113 (Ct.App.1993). "Unless clearly erroneous or deficient, findings of the trial court will be construed so as to uphold a judgment rather than to reverse it." *Herrera v. Roman Catholic Church*, 112 N.M. 717, 721, 819 P.2d 264, 268 (Ct.App.1991). The court's finding is essentially unchallenged, and it is, therefore binding on appeal. *See Stueber v. Pickard*, 112 N.M. 489, 491, 816 P.2d 1111, 1113 (1991).

**The Court Properly Applied Section 14–3–15.1**

{18} The IPRA unquestionably sets a policy of citizen entitlement to access to public records. *See* § 14–2–5; *State ex rel. Newsome v. Alarid*, 90 N.M. 790, 795, 568 P.2d 1236, 1241 (1977) (adopting a view that documents coming into official hands should generally be accessible so members of the public can know that the officials are "honestly, faithfully and competently performing their function as public servants" (internal quotation marks and citation omitted)). "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). Section 14–2–5 essentially codifies this right.

{19} Crutchfield argues that the Legislature did not intend Section 14–3–15.1(C) to modify that common law right of inspection and copying. Crutchfield further argues that Section 14–3–15.1(C) cannot be reconciled with the fundamental common law and IPRA statutory policy of openness and full access to public records, unless Section 14–3–15.1(C) is interpreted to apply only to electronic databases in which the State has manifested a proprietary interest, such as, for example, a unique and commercially valuable software program. In addition, Crutchfield argues that the district court's interpretation of Section 14–3–15.1(C) is unreasonable, placing form over substance, because it makes an arbitrary distinction as to format—an agency

must allow access to a record contained on a tape recording, but if the same record is stored as a part of an electronic database, the court's interpretation of the statute would support refusal to provide the record in any format but paper copies. Moreover, disallowing records in electronic format but offering paper copies of the records is, according to Crutchfield, "the functional equivalent of denying effective access to those records."

{20} Crutchfield offers further arguments. He asserts that the court's reading of the statute leads to absurd results, which he describes as follows. The Department provides partial access to its electronic database records of oil and natural gas tax filings to users of the ONGARD system that the Department has on its website, and allows those users to obtain electronic copies of those database records. However, none of the statutory limitations in Section 14–3–15.1(C) are applied by the Department to those users. No fee is being charged when an ONGARD user obtains an electronic copy of a portion of the severance tax database. Yet, Section 14–3–15.1(F) requires the Department to charge a fee every time the database is "searched, manipulated or retrieved or a copy of the database is made for any private or nonpublic use," resulting in a violation by the Department of that statute by allowing ONGARD users free access to portions of the database.

{21} Crutchfield concludes by arguing that "the only reasonable reading of Section 14–3–15.1 is that it was intended to protect a very discreet set of electronic databases, i.e., those in which the State has a proprietary interest." He asserts that the database records containing raw tax data do not implicate that legitimate State interest.

{22} "In interpreting statutes, we seek to give effect to the Legislature's intent." *Key v. Chrysler Motors Corp.*, 121 N.M. 764, 768, 918 P.2d 350, 354 (1996).

In ascertaining legislative intent, the provisions of a statute must be read together with other statutes in para materia under the presumption that the legislature acted with full knowledge of relevant statutory and common law.... Thus, two statutes

covering the same subject matter should be harmonized and construed together when possible, in a way that facilitates their operation and the achievement of their goals.

*Public Serv. Co. v. Public Util. Comm'n,* 1999–NMSC–040, ¶ 23, 128 N.M. 309, 992 P.2d 860 (internal quotation marks, emphasis, and citation omitted).

{23} The Legislature enacted the IPRA in 1947 and amended it thereafter several times. *See, e.g.,* § 14–2–1 (history). The Legislature enacted the PRA in 1959 and amended it also from time to time. *See, e.g.,* § 14–3–2 (history). The IPRA is a statutory scheme of general application, granting with certain exceptions "[e]very person . . . a right to inspect public records of this state," and providing that custodians of public records are to "furnish copies of the public records" and "may charge reasonable fees for copying public records, unless a different fee is otherwise prescribed by law." §§ 14–2–1(A), –7(C),–9(B)(1). Section 14–3–15.1(C), on the other hand, is a statute of very specific application relating specifically to copies of computer databases, and specifying conditions for access to and commercial use of the databases. "[W]e presume that the Legislature was informed as to existing law, and that the Legislature did not intend to enact a law inconsistent with any existing law." *Public Serv. Co.,* 1999–NMSC–040, ¶ 25, 128 N.M. 309, 992 P.2d 860 (internal quotation marks and citation omitted). When two statutes deal with the same subject, one general and one specific, the specific statute controls. *Stinbrink v. Farmers Ins. Co.,* 111 N.M. 179, 182, 803 P.2d 664, 667 (1990).

{24} We discern no intent on the part of the Legislature with respect to Section 14–3–15.1(C) than that that statute and the policies underlying it, and not the IPRA and the policies underlying it, apply to a request for "a copy . . . of a . . . medium containing a computerized database of a public record." § 14–3–15.1(C). Reading and interpreting Section 14–3–15.1(C) and the IPRA in *para materia,* we see no inconsistency or incompatibility in determining that the Legislature, in enacting Section 14–3–15.1(C), intended to permit State agencies to specifically limit public use of a certain type of record, thereby creating an exception to the general public policy underlying the IPRA. The Legislature could reasonably have determined that the copying and commercial use of a State agency's computer database created from public records available under the IPRA should be protected in some manner. The Legislature clearly had serious concerns about the use of databases reflected not only through its enactment of Section 14–3–15.1(C), but also by making certain unauthorized actions in regard to the database a criminal offense. *See* § 14–3–15.1(G). The Department raises what appear to be legitimate concerns the State may have, namely, (1) in regard to what the State describes as "counterparty risk," or "the risk that [one] party to a contract takes that the other party to a contract will default, or otherwise fail to perform"; (2) in regard to assuring that the user is a responsible party; and (3) in regard to recovering the State's cost and the inequity of allowing commercial exploitation of the database without paying a reasonable royalty.

{25} Crutchfield has not provided us any authority either forbidding a state legislature from granting a state protection for its electronic databases or limiting protection solely to instances in which a state can show a specific type of proprietary interest that would remove the database from the policy of access in the IPRA. Nor has Crutchfield supplied any authority that would forbid a state as a condition to supplying a copy of a database from charging a reasonable fee or royalty for its use. Finally, although Crutchfield has argued that, generally, the State may under Section 14–2–1(E) and (F) legitimately safeguard the confidentiality and privacy concerns of the State and its citizens, Crutchfield has supplied no authority or persuasive argument supporting a view that the database he wants should be distinguished from other types of databases that might require greater, more careful protection and were likely intended by our Legislature to receive such protection.

{26} The district court's interpretation and application of Section 14–3–15.1(C) is compatible with the language of the statute and,

absent a constitutional infirmity or contrary to legislative intent, is not incompatible with the IPRA's policy of citizen access to public records. Crutchfield's attack on the court's interpretation and application of Section 14–3–15.1(C) is little more than a veiled constitutional argument that the interpretation and application render the statute unconstitutional as applied, and that the statute can be saved from constitutional invalidity only if it is interpreted narrowly and applied only to what Crutchfield vaguely defines as a proprietary interest. However, the constitutionality of Section 14–3–15.1, in any regard, remains an open question. Our holdings in this opinion as to the database are based on the court's findings of fact, which are not attacked by Crutchfield; on the court's conclusions of law, which appear to be supported by the findings of fact and which are not specifically shown by Crutchfield to be unsupported by the findings; and on our interpretation of Section 14–3–15.1.

{27} Crutchfield's only tenable argument is that, harmonizing Section 14–3–15.1(C) with the provisions of the IPRA, the policies underlying and the requirements of the IPRA control a commercial user's access to and use of computer databases and forbid application of Section 14–3–15.1(C) in this case. We reject that argument under the circumstances of this case and hold that the district court did not err in its interpretation and application of Section 14–3–15.1(C) or in its holding that pursuant to Section 14–3–15.1(C) the Department correctly denied Crutchfield a copy of the electronic database and the continuing updates that Crutchfield requested.

### B. The Issue of Waiver

{28} Neither party sets out a standard of review as to Crutchfield's waiver point. Waiver generally involves issues of fact. See Reinhart v. Rauscher Pierce Sec. Corp., 83 N.M. 194, 198, 490 P.2d 240, 244 (Ct.App.1971) ("An intention to waive a right is ordinarily a question of fact."). "In determining whether a trial court's findings of fact are supported by substantial evidence, we view the evidence in the light most favorable to support the finding, and we do not consid-

er any evidence unfavorable to the finding." Williams v. Williams, 109 N.M. 92, 95, 781 P.2d 1170, 1173 (Ct.App.1989). "We do not reweigh the evidence or substitute our judgment for the trier of fact." Id. "The duty to weigh the credibility of witnesses and to resolve conflicts in the evidence is for the trial court, not this [C]ourt." Id. "We liberally construe a trial court's findings in determining whether they support the trial court's judgment." Id.

When a party is challenging a legal conclusion, the standard for review is whether the law correctly was applied to the facts, viewing them in a manner most favorable to the prevailing party, indulging all reasonable inferences in support of the court's decision, and disregarding all inferences or evidence to the contrary.

Golden Cone Concepts, Inc., v. Villa Linda Mall, Ltd., 113 N.M. 9, 12, 820 P.2d 1323, 1326 (1991); cf. Thomas v. City of Santa Fe, 112 N.M. 456, 459, 816 P.2d 525, 528 (Ct.App. 1991) (stating that even if requested findings were not submitted, appellate court may review district court's findings and conclusions "to determine whether the conclusions ... appropriately flowed from the findings").

{29} Crutchfield contends that the Department waived its right to impose Section 14–3–15.1 restrictions on him with respect to the database in question because the Department permits requests for and the downloading of portions of the very same records through the Department's website and the ONGARD system. Any other conclusion, Crutchfield argues, "would violate the fundamental notion that similarly situated persons must be treated uniformly under the law." Thus, Crutchfield asserts, "[t]he district court erred in not considering the Department's obligation to treat similarly situated persons in a similar manner."

{30} In more detail, Crutchfield argues that because Section 14–3–15.1(C) by its terms grants an agency discretion, an agency can waive any or all of the statutory conditions. The waiver occurred, according to Crutchfield, by the Department's failure to impose any of the statute's limitations and restrictions on persons requesting and downloading portions of the very same records

that are available on and obtainable from its website. Having determined not to impose the statutory limitations and restrictions on those using the website, Crutchfield argues, the Department cannot treat him differently by imposing the limitations and restrictions because he has requested a copy of the entire database rather than only those portions of which are available on the website. Relying on *Community Public Service Co. v. New Mexico Public Service Commission*, 76 N.M. 314, 316–17, 414 P.2d 675, 676 (1966), which involved a claim of an unconstitutional classification, Crutchfield argues "[t]here is no legal support for the Department['s] insistence that it be allowed to impose the Section 14–3–15.1(C) restrictions on [Crutchfield] while waiving those restrictions for the users of the ONGARD website." As discussed earlier in this opinion, contrary to the district court's finding on the issue, Crutchfield argues that he "[has] not stated [he is] unwilling to pay royalties under any circumstances," but instead "[has] stated [that he is] unwilling to [be] singled out for discriminatory treatment."

{31} The court did not address waiver or discriminatory treatment in its findings of fact or conclusions of law. However, because these issues were raised by Crutchfield's requested "findings and conclusions," we will assume that the district court implicitly determined the issues against Crutchfield. *See Landskroner v. McClure*, 107 N.M. 773, 775, 765 P.2d 189, 191 (1988) (stating that failure of the district court to make a finding of fact is regarded as a finding against the party seeking to establish the affirmative).

{32} We are unpersuaded by Crutchfield's arguments. He asserts waiver but argues discriminatory treatment. Yet he asserts no constitutional or statutory discrimination attack on the Department's manner of allowing access to and use of its database under Section 14–3–15.1(C). Further, Crutchfield fails to persuasively explain or to provide persuasive authority as to why the Department cannot make a decision to place limited portions of the database on its website for the public to download free of charge, yet refuse to supply a particular commercial user or to

supply commercial users generally with a copy of the entire database and continuing updates, without an agreement in regard to royalties and use. Other than citing a case setting out a general rule as to waiver, Crutchfield does not provide case or statutory authority that supports his waiver argument. That the Department has decided to provide, free of charge, portions of its database piecemeal on the website while at the same time placing restrictions on or even denying use to persons requesting the entire database for commercial use does not strike us as a circumstance that permits, much less requires, a determination that the Department waived its Section 14–3–15.1(C) rights. We therefore hold that the district court did not err in failing to find that the Department had waived its right to impose the conditions set forth in Section 14–3–15.1(C) on Crutchfield.

## C. The Issue of Sanctions

{33} Again, the parties violate the procedural rules by failing to set out a standard of review as to Crutchfield's sanction point. *See* Rule 12–213(A)(4), (B). This issue does not involve disputed facts. We review for abuse of discretion whether a court has erred in not sanctioning a party. *See Gonzales v. N.M. Dep't of Health*, 2000–NMSC–029, ¶¶ 13, 16, 129 N.M. 586, 11 P.3d 550. If in exercising its discretion a court fails to properly interpret a statute or apply the law, our review on that question is de novo. *N.M. Right to Choose/NARAL v. Johnson*, 1999–NMSC–028, ¶ 7, 127 N.M. 654, 986 P.2d 450.

{34} Crutchfield contends that the district court erred in failing to sanction the Department for its response to Crutchfield's request, asserting that Section 14–2–5 declares that providing access to public records is an "essential function" and an "integral part of the routine duties" of public officials. Further, Crutchfield contends that the Department "fail[ed] to provide a careful, reasoned response to [his] records request." More particularly, Crutchfield asserts that the Department failed to provide an explanation for its denial of the electronic database, as required by Section 14–2–11(B) of the

IPRA. He further asserts that the Department failed to forward his request to the General Services Division of the State, the custodian of certain records requested, until more than two and one-half months after the Department received the request. In addition, Crutchfield points to several "mistakes, omissions and oversights by the Department [that] further demonstrate that [his] records request was not handled with the level of care required by the [IPRA]." Crutchfield sought the imposition of sanctions under IPRA Section 14–2–11(C) and asserts court error in failing to impose the sanctions.

{35} The issue before us is one of law. We have determined that the district court did not err in holding that Crutchfield's request was governed by Section 14–3–15.1(C) and in upholding the Department's rejection pursuant to Section 14–3–15.1(C) of Crutchfield's electronic database request. We are unpersuaded that the sanction provisions of the IPRA are applicable to the circumstances in this case. We hold that the district court did not abuse its discretion or otherwise err in refusing to impose sanctions for the alleged violations of procedural requirements of the IPRA.

### D. Request Seeking Descriptions of Abbreviations and Terms

{36} Crutchfield contends that the district court erred in determining that his request for records that contained abbreviations and terms used by the Department in categorizing and sorting the severance tax data on its electronic database did not constitute a records request but, rather, was merely a request for information. Having determined that the district court did not err in upholding the Department's rejection pursuant to Section 14–3–15.1(C) of Crutchfield's electronic database request, we see no basis in which Crutchfield is entitled to the records or information he requested. The issue is essentially moot. A reviewing court generally does not decide academic or moot questions. *Srader v. Verant,* 1998–NMSC–025, ¶ 40, 125 N.M. 521, 964 P.2d 82. We therefore do not address whether the request for documents showing abbreviations and terms used in connection with the database falls within the IPRA or the PRA.

### E. Crutchfield's Reply Brief and Footnotes

{37} Crutchfield's reply brief failed to set out a table of authorities as required under Rule 12–213(C). His reply brief consisted of approximately one page of introductory comments, and then twenty and one-half pages of argument, including nine footnotes. He did not seek or obtain the permission of this Court to file a reply brief with the argument portion in excess of fifteen pages. *See* Rule 12–213(F). This Court is expressly given authority on its own initiative to sanction a party for failure to comply with the rules. *See* Rule 12–312(D) NMRA. Based on Crutchfield's failures to comply with Rule 12–213(C) and (F), we did not consider the reply brief that was filed. We entered an order requiring Crutchfield's appellate counsel to submit an amended reply brief within five days of the date of the order, one that contained no footnotes and no new argument or authority.

## CONCLUSION

{38} We affirm.

{39} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Chief Judge and A. JOSEPH ALARID, Judge.