This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**IN THE MATTER OF THE RUSSELL FAMILY TRUST,**

and

**SHARON RUSSELL,**

Plaintiff-Appellant,

v.

**NOS. 32,629 and 32,730 (consolidated)**

**ESTATE OF DIANA RUSSELL and TRACY BELCHER, as trustee of the RUSSELL FAMILY TRUST,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Teddy Lowe Hartley, District Judge**

Eric Dixon Attorney & Counselor at Law, P.A.
Eric D. Dixon
Portales, NM

for Appellant

Doerr & Knudson, P.A.
Stephen E. Doerr
Portales, NM

for Appellee Estate of Diana Russell

Greig & Richards, P.A.
William H. Greig
Clovis, NM

for Appellee Tracy Belcher

**MEMORANDUM OPINION**

**GARCIA, Judge.**

{1}     Plaintiff Sharon Russell appeals the district court's judgment involving two separate causes of action involving the Russell Family Trust (the Trust) that have been consolidated on appeal. We affirm.

**BACKGROUND**

**A.     The Trust and its Successor Trustees**

{2}     The Trust was created by Dorothy Russell and Wiley Russell in 1992. Pursuant to the terms of the Trust, when Wiley Russell died in 2000, the Trust was split into an "A" trust (Trust A) and a "B" trust (Trust B).[1] Trust A was a revocable trust of which

---

[1]We use the terms "Trust A" and "Trust B" only as necessary to distinguish between the original Russell Family Trust, Trust A, and/or Trust B. Otherwise, we use the term "the Trust" throughout the opinion for convenience and because the substantive issues in this case do not involve legal distinctions between these trusts.

Dorothy was the settlor, trustee, and life beneficiary. Trust B was an irrevocable trust of which Dorothy was the trustee and life beneficiary, but not the settlor. Dorothy's two daughters, Sharon Russell (the Plaintiff in this case) and Diana Russell, were initially designated successor co-trustees of Trust A and Trust B.

{3}     However, due to "serious and irreconcilable disharmony" between Sharon and Diana, Dorothy amended Trust A in 2005 to remove Sharon and Diana as successor co-trustees and replace them with two independent successor trustees. Because Trust B was irrevocable, Dorothy filed an action in the district court in 2005 to replace Sharon and Diana as successor co-trustees for Trust B with the same two independent successor trustees. We refer to this action as "the 2005 case." In January 2006, the district court entered an order in the 2005 case removing Sharon and Diana as successor co-trustees for Trust B and replacing them with the two independent successor trustees.

{4}     About nine months later, one of these independent successor trustees resigned. Dorothy continued to function as the trustee of the Trust until she died in November 2010. About a month after Dorothy died, the second independent successor trustee, who became the acting trustee upon Dorothy's death, informed the beneficiaries that he wished to resign. Before resigning, he designated Tracy Belcher, a local certified public accountant, to serve as the successor trustee.

**B.     The District Court Filings Involving Sharon, Diana, and Ms. Belcher**

{5}     In January 2012, Sharon and her children[2] filed a petition in the 2005 case for an accounting of the Trust and to remove Ms. Belcher as trustee, asserting breaches of fiduciary duties and trust mismanagement. In March 2012, Diana learned of Sharon's petition and filed a "Motion to Dismiss" it for lack of subject matter jurisdiction. A few days later, Diana opened a new cause of action, asking the district court to order that her share of the trust assets be distributed to her (the 2012 case). Ms. Belcher, Sharon, and Diana then filed several documents in both cases that are not relevant to this appeal.

**C.     July 2012 Hearing and August 2012 Order**

{6}     Although the district court had not formally consolidated the 2005 and 2012 cases, it held a joint hearing on matters pending in both cases on July 23, 2012, and entered an order on August 7, 2012 (the August 2012 order). As to matters between Sharon and Ms. Belcher, the district court ordered the parties to "attempt, in good faith, to meet and negotiate a resolution of all issues pending in this proceeding" or else it would order a formal mediation. As to Diana's petition for distribution of the trust assets, the district court entered an order stating that the parties agreed that Diana

---

[2] Sharon's children are not involved in this appeal.

4

was entitled to a distribution of 40% of the assets in Trust A and 50% of the assets in Trust B, that Diana had no claims against Ms. Belcher, and that Sharon requested a portion of Diana's share of Trust A be held pending resolution of Sharon's claims against Ms. Belcher.

{7}     The district court also ordered that Randall Burnett, another certified public accountant, serve as trustee of the Trust; that Mr. Burnett distribute to Diana her share of the Trust assets, except for a sum agreed to by the parties to be held until Sharon's claims against Ms. Belcher were resolved; that the parties would have two weeks to negotiate a distribution of the real property assets in the Trust that would allow Mr. Burnett to distribute Diana's share; and, that if the parties could not agree to these matters, the district court would hold a hearing as soon as possible to resolve them.

**D.     Sharon's Motions After Diana's Death**

{8}     About a month later, on August 28, 2012, Diana died. Her estate was substituted as a party in the proceedings. Three days after Diana's death, Sharon filed an emergency motion in the 2005 and 2012 cases. In this motion, Sharon asked the district court to "immediately stay trust distribution" due to Diana's death and the suspicious circumstances and police investigation surrounding her death. The motion also asked that Diana's home "be placed under control" of the court-appointed trustee Mr. Burnett and that "*no one be allowed in the home until such time as an*

*investigation can be completed*." (Emphasis added.) Finally, the motion asked that any of the Trust assets that had previously been distributed to Diana "be placed with the [c]ourt or back into the [T]rust until further order of the court." About ten days after Diana's death, Sharon filed another motion, asking the district court to modify the distribution of the Trust. In this motion, Sharon asserted that Diana's share had lapsed due to her death without surviving issue and that the trust settlors "intended their hard-earned life-long accumulated family assets to STAY within their family."[3] Sharon asked the district court to order the trustee to distribute all of the Trust assets to the "remaining beneficiaries"—Sharon and her children.

{9}    Ms. Belcher and Diana's estate opposed Sharon's motions. Diana's estate asserted that the new motions were "without valid factual or legal basis[,]" a "malicious abuse of process[,]" and asked for an award of attorney fees and costs for defending against the motions. Sharon then moved to strike the Notice of Substitution of Party filed by Diana's estate as "premature[,]" asking that it be "dismissed or, in the least, held in abeyance pending the outcome of the probate matters [involving Diana's estate]."

---

[3] The record shows that in her will, Diana bequeathed all of her estate's assets to "recognized 501(c)(3) charitable organizations that provide for special needs children and children with handicaps, including Native Americans."

6

**E.    October 2012 Hearing and Order**

{10}    The district court held a hearing on the pending motions on October 9, 2012. We describe the relevant details of this hearing more fully in our discussion below. After the hearing the district court entered a written order on October 29, 2012 (the October 2012 order). As to the distribution of Diana's share of the Trust assets to her estate, the October 2012 order stated, in relevant part, that:

- "[t]he [c]ourt heard the proffered testimony from [Sharon's witnesses,] Detective Sergeant Chris Williams of the Portales Police Department and Frank Mason . . . [and] determines that their testimony and the issues pertaining thereto are not relevant to the proceedings before the [c]ourt";
- Diana's death did not affect its August 2012 order regarding distribution of the Trust assets;
- Sharon's emergency motion was "not relevant" and "should be denied";
- Sharon's motion to strike the notices of death and substitution of party was "not timely[,] . . . [was] without basis[,] and should be denied";
- Sharon's motion to modify the order for distribution of trust assets was "without a valid, factual and/or legal basis and should be denied";

- "the pleadings filed by . . . [Sharon] herein [were] not pertinent to the administration of the Trust as set forth in prior [c]ourt [o]rders and the [c]ourt denies the same"; and

- the court-appointed trustee Mr. Burnett shall "serve as a [s]pecial [m]aster" and "effectuate the final distribution of the Trust assets" according to the August 2012 order, "review and determine if outstanding invoices are proper and should be paid[,]" and that a "list . . . of outstanding invoices . . . be circulated" and "any questions . . . raised . . . be presented to [the district c]ourt for approval" or "otherwise, paid now."

As to Sharon's claims against Ms. Belcher, the October 2012 order stated, in pertinent part, that:

- the district court scheduled a hearing to be held on December 19, 2012 to address Sharon's claims against Ms. Belcher;

- within thirty days of the October 2012 order, the trustee Mr. Burnett, "acting as [s]pecial [m]aster," was to "make a determination whether . . . [Ms. Belcher's] fees and expenses submitted [were] reasonable and allowable trust expenses"; and

- once Mr. Burnett completed a proposal for the distribution of assets and the fees to be paid to Ms. Belcher, "any party may file their pleading challenging the same within ten (10) days . . . [and] request a hearing on the same at that time."

Mr. Burnett prepared his proposed distribution of assets and delivered this proposal to the parties and the district court. The record shows that Sharon did not file any pleadings challenging Mr. Burnett's proposal for distribution of the assets.

**F.    December 19, 2012 Hearing**

{11}    On December 18, 2012, a new attorney filed an appearance as co-counsel on behalf of Sharon and moved to continue the December 19, 2012 hearing. A brief hearing did occur on December 19, 2012, however, where counsel for all parties and the trustee Mr. Burnett were present. At this hearing, Sharon's new co-counsel stated:

> We have reached somewhat of an agreement . . . to get us to the next level. There was an agreement after speaking to Mr. Burnett, and myself, [Diana's estate's counsel], [Sharon's original counsel], and [Ms. Belcher's counsel]. We're going to release certain fees that were talked about in the conference room and we're gonna get those to Ms. Belcher and [Ms. Belcher's counsel] today. Pursuant to that agreement, [Ms. Belcher's counsel] is going to allow us some little bit of time to look over, if we have some any other issues. He's not gonna ask for a finalized thing or dismissal with prejudice. We're gonna work on it and sit in there in our offices at nighttime and if we got issues we'll raise them with [Ms. Belcher's counsel] and Ms. Belcher right now. But what I've informed my client is we're not going to argue over itty bitty bull crap stuff. If we got bigger issues to file, we'll go to bigger issues to file

9

and we gotta take those on but not argue over bull things and spend more money.

When discussing whether to schedule a merits hearing on Sharon's claims against Ms. Belcher for December 26, 2012, Sharon's new co-counsel stated:

> I'm gonna let you know, Judge, that there ain't gonna be a merits hearing until me and [Ms. Belcher's counsel] and [Diana's estate's counsel] can work out all the wrinkles, and the only time we're going to use the court's resources and have any more of these resources used taking up the trust money, is if we have some real serious issues [inaudible].

The district court responded, "If you've got 90% of the things settled, [and] you got 10% of the things over here that need the court input, narrow them down and let me make a decision on them and that way everybody's mad at me. Fair enough?" All counsel replied, "fair enough." The district court then scheduled the next hearing for December 26, 2012 to address "anything that can't be worked out."

**G.      December 26, 2012 Hearing and January 2013 Order**

{12}      On December 26, 2012, the district court held its scheduled hearing concerning Sharon's claims against Ms. Belcher. We describe the relevant details of this hearing in our discussion below. In the January 2013 order that resulted from this hearing, the district court found that Mr. Burnett had prepared a final distribution plan for the Trust and that Sharon and Ms. Belcher reached an agreement on payment of Ms. Belcher's fees. It approved Mr. Burnett's plan and ordered that the trust assets be distributed according to the plan, approved the "compromise payment" of fees to Ms. Belcher by

10

the Trust, and ordered that Sharon pay Diana's estate $2500 in attorney fees and Ms. Belcher $1000 in attorney fees for defending against Sharon's new motions that were alleged to be a malicious abuse of process.

**H.      Sharon's Due Process Arguments on Appeal**

{13}      Sharon argues in her brief in chief that the district court violated her procedural due process rights when it:

       1.      refused to allow her witnesses to testify at the October 9, 2012 hearing;

       2.      refused to allow her to present testimony and evidence "related to the reasonableness of [Ms. Belcher's] fees" at the December 26, 2012 hearing;

       3.      approved Mr. Burnett's report regarding distribution in its January 2013 order "without any hearing" (emphasis omitted); and

       4.      awarded attorney fees against Sharon in its January 2013 order "without any hearing[.]" (Emphasis omitted.)

**I.      New Arguments that Sharon Makes for the First Time in her Reply Brief**

{14}      Sharon makes additional new arguments in her reply brief that she does not assert in her brief in chief. These new arguments are:

       1.      the district court "lacked jurisdiction to make any determinations" in this case because "the [T]rust established binding arbitration as the sole

11

method of resolving disputes between the parties" (emphasis omitted); and

2. "[a]lternatively, the [district] court improperly dismissed the claims of the trustee's self-dealing[.]" (Emphasis omitted.)

**DISCUSSION**

**A.    Procedural Due Process Issues Regarding the October 9, 2012 Hearing**

{15}    Sharon asserts that the district court violated her procedural due process rights when it refused to admit her witnesses' testimony at the October 9, 2012 hearing, "including [that of] Officer Williams of the Portales Police Department and/or the care-taker of [Diana,] Frank Mason." We do not agree with this argument.

{16}    The October 2012 order stated that "[the district court] heard the proffered testimony from Detective Sergeant Chris Williams of the Portales Police Department and Frank Mason[,]" and it "determine[d] that their testimony and the issues pertaining thereto [were] not relevant to the proceedings before the [c]ourt." Sharon does not dispute the district court's finding that her witnesses' testimony was not relevant under our rules of evidence. *See* Rule 11-401 NMRA (setting forth the test for relevant evidence); Rule 11-402 NMRA (stating that "[i]rrelevant evidence is not admissible"). Instead, she seems to argue that the exclusion of her witnesses' testimony was a per se violation of her right to procedural due process, regardless of

12

its relevancy. In support of this argument, Sharon cites this Court's decision in *In re Miller* for the general proposition that "[a] refusal to allow witnesses to be called is a denial of procedural due process." 1975-NMCA-116, ¶ 37, 88 N.M. 492, 542 P.2d 1182, *overruled on other grounds by El Castillo Ret. Residences v. Martinez*, 2015-NMCA-041, 346 P.3d 1164.

{17}   In *Miller*, property owners protested the assessor's valuation of their real property before the county's valuation protests board. 1975-NMCA-116, ¶ 18. The board refused to allow the property owners to conduct discovery or present any evidence, citing a statute providing that court rules do not apply to hearings held before the board. *Id.* This Court rejected the board's decision, stating that "[t]he reason for making the Rules of Evidence and Rules of Civil Procedure inapplicable to hearings before county valuation protest boards is not to restrict the discovery and presentation of evidence, but to facilitate it." *Id.* ¶ 19. The Court concluded that the evidence the property owners sought to present "was relevant" to the board's valuation and that the board must allow its admission. *Id.* ¶¶ 26-27.

{18}   Unlike *Miller*, the district court in this case did consider the proffered testimony of Sharon's witnesses and found that their testimony was not relevant. Sharon does not dispute this finding, nor does she develop her argument by explaining how the testimony was relevant to the proceedings or how it would have affected the outcome.

*See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (observing that we do not review unclear or undeveloped arguments). And, Sharon does not cite any authority for the proposition that a district court's refusal to admit *irrelevant* evidence violates due process. Therefore, we decline to review this argument any further. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority. We therefore will not do this research for counsel. Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal." (citations omitted)).

**B.      Entry of the October 2012 Order**

**{19}**      Sharon asserts that the October 2012 order, setting forth the process and time frame for distribution of the Trust assets and resolution of disputes, was entered "*sua sponte*" without giving counsel an opportunity to review or object to it, in violation of Rule 1-058(C) NMRA. *See* Rule 1-058(C) ("In all events, before the court signs any order or judgment, counsel shall be afforded a reasonable opportunity to examine the same and make suggestions or objections."). We disagree.

**{20}**      First, the record does not support Sharon's argument that the October 2012, order was entered "*sua sponte*" without the opportunity for any input from Sharon.

14

Sharon's counsel was present at the October 9, 2012 hearing, she participated in the discussions about the content of the order that would result from the hearing, and the content of the October 2012, order is consistent with what was discussed at the hearing, in relevant part, as follows:

> [COURT to Mr. Burnett as special master:] Why don't you do this. Why don't you get the proposal typed, fixed, give it to both parties, let them object to it if they need to . . . . Then we'll have a hearing on approval of your deal. And you can hear the objections, and I'm appointing you to be in charge of making a fair resolution of those objections, and unless there's something that I don't think of right now, we'll approve that as the court's order. So, that's your job.

> . . . .

> [DIANA'S ESTATE'S COUNSEL:] Your Honor, if I might, just for purposes of the order, the court's giving Mr. Burnett how long to submit his proposal?

> [COURT:] Thirty days long enough?

> [DIANA'S ESTATE'S COUNSEL:] . . . Can he do it in less than that?

> [Laughter in the court room]

> [COURT to Sharon's counsel]: Thirty days?

> [SHARON'S COUNSEL:] Works for us, Your Honor.

> [COURT]: Okay, Thirty days.

> [DIANA'S ESTATE'S COUNSEL:] And then each side has seven days—

> [COURT:] Ten. Ten days to object.

15

[DIANA'S ESTATE'S COUNSEL:] And then Mr. Burnett has how long to resolve the disputes?

[COURT:] If he has disputes and he can't resolve them in another ten days, we'll bring them back and the court will resolve them. And then I'm gonna resolve whatever dispute it is with Ms. Belcher. . .

. . . .

[COURT to Ms. Belcher's counsel:] Alright, what I want you to do is kinda what I just said earlier. I want you to present your bill, Ms. Belcher's bill . . . to . . . Mr. Burnett, let him review them. If he thinks it's fair I want you to put those in your report. Unless they're grossly unfair or there's skullduggery, I'm gonna order that they be paid so that we don't run up any more bills. Put that in the order, counsel.

. . . .

[COURT to all counsel:] Here's the court's position at this time. Based upon the things that we've talked about here this afternoon, the things that I've said Mr. Burnett needs to put together, basically he's going to be a special master for this purpose. And when his report comes in, and you all can work with the report if you want to, when the report comes in and it looks reasonable, and of course [Sharon's counsel] has a right to object to that, then I anticipate that if it suits the court, the court will adopt it and we'll end the deal.

{21} Second, Sharon did not preserve her argument regarding the entry of the October 2012 order. *See Cockrell v. Cockrell*, 1994-NMSC-026, ¶ 6, 117 N.M. 321, 871 P.2d 977 ("[T]o preserve trial error for appeal it is necessary to call the error to the attention of the trial court."). Sharon does not point to, and we have not found, any place in the record where she objected to the content of or manner in which the October 2012 order was entered. *See* Rule 12-213(A)(4) NMRA (requiring appellant

16

to include in the brief in chief "a statement explaining how the issue was preserved in the court below"); *Crutchfield v. New Mexico Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("Absent . . . citation to the record or any obvious preservation, we will not consider the issue."). And, Sharon does not develop her argument by explaining how the content of the October 2012 order was inconsistent with the oral decisions rendered at the October 9, 2012 hearing or how the failure to adhere to Rule 1-058(C) affected her rights or otherwise harmed her. *See Headley*, 2005-NMCA-045, ¶ 15 (observing that we do not review unclear or undeveloped arguments); Rule 1-061 NMRA ("No error or defect in any ruling or order or anything done or omitted by the court or by any of the parties is ground for . . . vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

**{22}** Sharon also contends that the entry of the October 2012 order was improper because it "did not address the still pending issues regarding [Ms. Belcher]'s handling of the trust assets." Again, Sharon does not develop this argument by explaining why and under what authority the district court was required to resolve her claims against Ms. Belcher before entering the October 2012 order. *See Headley*, 2005-NMCA-045,

17

¶ 15 (observing that we do not review unclear or undeveloped arguments); *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority."). Again, she does not explain how entering the order prior to resolution of her claims against Ms. Belcher affected her rights or otherwise harmed her. *See* Rule 1-061 ("No error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for . . . vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice."). And, she did not preserve this argument by objecting to entry of the October 2012 order in the district court or requesting reconsideration of any error after the order was entered. *See* Rule 12-213(A)(4) (requiring appellant to include in the brief in chief "a statement explaining how the issue was preserved in the court below"); *Cockrell*, 1994-NMSC-026, ¶ 6 ("[T]o preserve trial error for appeal it is necessary to call the error to the attention of the trial court."); *Crutchfield*, 2005-NMCA-022, ¶ 14 ("Absent . . . citation to the record or any obvious preservation, we will not consider the issue.").

{23}    Furthermore, the record shows that at the October 9, 2012 hearing, the parties and the district court recognized that Sharon's claims against Ms. Belcher were still pending, Sharon's counsel asked for a separate hearing on those claims, the district

18

court agreed to another hearing on those claims, and further hearings were then scheduled to address claims against Ms. Belcher.

> [MS. BELCHER'S COUNSEL:][T]here's still the unresolved conflicts between [Sharon] and Ms. Belcher that still are in issue that either have to be mediated or set for trial.
>
> . . . .
>
> [SHARON'S COUNSEL:] Your Honor, we had several issues, one of which was taking a corporate trustee fee when you're not functioning as a corporate trustee.
>
> . . . .
>
> [SHARON'S COUNSEL:] Your Honor, the original document that started all of this you have yet to hear. We would like a setting and we would like you to hear [it].
>
> . . . .
>
> [COURT:] You'll get a setting, we'll hear that[.]

**C. The Reasonableness of Ms. Belcher's Fees Addressed at the December 26, 2012 Hearing**

{24} Sharon asserts that at the December 26, 2012 hearing, the district court "decided [to rule on the issue of Ms. Belcher's fees] without reviewing the trustee's billing or allowing any testimony regarding the appropriateness of the trustee's [offered] billing to stand." Specifically, Sharon asserts that the district court violated her procedural due process rights a second time when it "refused to receive any evidence related to the reasonableness of the successor trustee's fees" and "refused to hear the testimony

19

of the trustee as to the reasonableness of her fees or any other matters." Again, we do not agree with this argument.

{25}     First, Sharon did not preserve this argument. Our review of the December 26, 2012 hearing reveals that Sharon's purpose for calling witnesses was to (1) ask Mr. Burnett why he suggested reducing Ms. Belcher's fees in order to support Sharon's claims that Ms. Belcher mismanaged the Trust and breached her fiduciary duties; and (2) establish for purposes of appeal that Sharon's agreement to have the Trust pay discounted fees to Ms. Belcher did not operate as a release of the other claims against her. Sharon did not ask to present testimony to establish whether the discounted fees approved by the district court and actually paid to Ms. Belcher were reasonable. In relevant part counsel stated:

> [DIANA'S ESTATE'S COUNSEL:] Would the court allow me to call Ms. Belcher . . . . I understood that there was a compromise reached . . . that Ms. Belcher had submitted a request for payment of her fees, that there was discussion back and forth that Ms. Belcher discounted her fees. It's my understanding that was in exchange for release of their claim. There's gotta be a reason why the fees were reduced and I need that on the record that I think there's been a compromise and settlement, if they have actually agreed to a reduced amount and paid her then I think that's compromise and settlement. If [Sharon is] going to appeal, I need a record of that.
>
> . . . .
>
> [SHARON'S COUNSEL:] I guess we would also then want to call Mr. Burnett . . . . I think [Mr. Burnett] may have made a decision because of some of the way that things were done with taking fees for accounting

20

and a variety of other things and he chose to do a lesser amount to try to make it a more fair amount. But Mr. Burnett was not in on discussions with us, and so if we need to make a record about why Mr. Burnett chose to lessen the fee, we would certainly like to do that.

[SHARON'S CO-COUNSEL:] Let me correct something. I can assure you [that Ms. Belcher's counsel] was in the conference room. We had a ten-minute conference where this was discussed. [Ms. Belcher's counsel] was there, [Diana's Estate's counsel], myself, and [co-counsel], with Mr. Burnett. And Mr. Burnett at that point in time talked about the reduction of fees. It was not about a release of claims, Judge. And that's gonna be important for the appellate process. It was about a decision that Mr. Burnett had made determining the fees at that point in time. So I guess for the appellate process, it'd have to be on the record, Judge.

. . . .

[SHARON'S CO-COUNSEL:] It wasn't because of a release of claims, Your Honor. And I know this is just bitter-battering right now, but . . . it's important for the appellate process, Judge. It is not for the release of claims. We had made that determination. He actually came with a check. So we had worked out that amount.

{26} Second, statements made by Sharon's counsel at both the December 19, 2012 hearing and the December 26, 2012 hearing show that Sharon agreed to the discounted sum that was actually paid to Ms. Belcher: "There was an agreement . . . [w]e're going to release certain fees that were talked about in the conference room and we're gonna get those to Ms. Belcher and [Ms. Belcher's counsel] today." Sharon does not argue, and the record does not indicate, that further sums were paid to Ms. Belcher that Sharon did not agree with. She argued only that the claims against Ms. Belcher for mismanagement of the Trust and breach of her fiduciary duties were not compromised

21

and released at this stage of the December 26, 2012 hearing. No further testimony was offered by Sharon and no further rulings were requested from the court regarding Ms. Belcher's fees.

**{27}** Therefore, we decline to review this argument regarding the reduced fees paid to Ms. Belcher any further because it is was not preserved below and is being made for the first time on appeal. *See Cockrell*, 1994-NMSC-026, ¶ 6 ("[T]o preserve trial error for appeal it is necessary to call the error to the attention of the trial court."); *Crutchfield*, 2005-NMCA-022, ¶ 14 ("To preserve error for [appellate] review, a party must fairly invoke a ruling of the district court on the same grounds argued in this Court. Such preservation allows the district court an opportunity to correct error, thereby avoiding the need for appeal, at the same time creating a record from which the appellate court can make an informed decision. Thus, on appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue." (citations omitted)).

**{28}** To the extent that Sharon also argues that the district court erred when it refused to hear testimony about "any other matters" at the December 26, 2012 hearing, the record does not support this argument. Sharon's counsel declined to present testimony about other matters or make any offer of proof on the record after the district court

cautioned Sharon that sanctions could result from continuing to pursue non-meritorious claims.

[COURT:] Alright, let me do this. I'm closing everything down but that. Now you need to hear this. If I determine that what you're suggesting is baseless as they suggest, I will move some big attorney fees over. So you better be sure that they've got meat.

[SHARON'S CO-COUNSEL:] Well then I'd ask for five minutes to speak to my client.

[COURT:] I wish you would.

[Brief recess]

[SHARON'S CO-COUNSEL:] We are not going to take that opportunity that you suggested. We will rest on the findings you've made at this point and time and take it from there.

[COURT:] So the record's clear, the only reason I made that statement is based upon some of the past filings and stuff that I've seen in here, they're not meritorious. And if they're meritorious, we would listen to 'em, but if they're not, we would move the fees. That's all I was trying to say. So . . . we're closed down.

. . . .

[COURT:] Now I understand that the conversation that we just had . . . with regard to the presentation of some irregularities in the payment of Ms. Belcher or . . . actions Ms. Belcher did or didn't do, the court cautioned you that I would look at that real strong to see if it was in good faith and made sense to me and if not I might move some attorney's fees over, and you came back and said that you weren't gonna contest it. Did I misunderstand that?

[SHARON'S CO-COUNSEL:] No. . . what we're saying to you, Judge, is that you made the point, if you're gonna put on evidence, you guys

look out because if I find these are unfounded at that point in time then we're gonna have to move those attorneys fees over. I talked to my client and he said that was a good idea and I said, look, I don't think we oughtta take this opportunity right now. I don't think the judge is in a position right now with these motions to find in our favor. And I think at this point in time we oughtta let the judge make his own discretion like [Ms. Belcher's counsel] asked for, dismiss it, and then go on.

[COURT:] I hear what you're trying to do, counsel. But whatever the record has the record has. I don't intend to put on any witnesses unless you just bow up over it[.]

**D.     The Approval of Mr. Burnett's Report**

**{29}**     During the December 19, 2012 and December 26, 2012 hearings, as well as in the resultant January 2013 order, the district court approved Mr. Burnett's plan for distribution of the Trust assets. Under the heading labeled "Argument" in Sharon's brief in chief, she states that the district court also violated her procedural due process rights when it approved Mr. Burnett's distribution plan "without any hearing." (Emphasis omitted.) However, Sharon does not mention or develop this argument any further. *See Headley*, 2005-NMCA-045, ¶ 15 (observing that we do not review unclear or undeveloped arguments). Sharon does not explain how a failure to hold further hearings on the approval of Mr. Burnett's plan harmed her, or how the substance of the distribution plan was improper or harmful to her. *See* Rule 1-061 ("No error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for . . . vacating, modifying or otherwise disturbing a judgment

or order, unless refusal to take such action appears to the court inconsistent with substantial justice."). It was clear from the parties' agreement discussed on the record at both hearings that Mr. Burnett's plan for the distribution of Trust assets was approved and accepted by both parties. Sharon did not ask to call any witnesses or make any other offer of proof that would have alerted the district court to her disapproval of Mr. Burnett's distribution plan.

{30}    We emphasize that the October 2012 order required Sharon to file any objections to Mr. Burnett's plan with the district court. The record establishes that Sharon did not file any objections to Mr. Burnett's distribution plan. At the December 26, 2012 hearing, when the district court verbally approved Mr. Burnett's plan, Sharon did not object and did not ask the district court to discuss the distribution plan any further. After entry of the January 2013 order, Sharon did not file any objections to the distribution plan or ask the district court to reconsider its ruling to approve the distribution plan. Thus, Sharon's argument that the district court failed to have an additional hearing on Mr. Burnett's distribution plan or otherwise improperly approved the plan is without merit and was not preserved. *See* Rule 12-213(A)(4) (requiring appellant to include in the brief in chief "a statement explaining how the issue was preserved in the court below"); *Crutchfield*, 2005-NMCA-022, ¶ 14

("Absent . . . citation to the record or any obvious preservation, we will not consider the issue.").

**E.      Award of Attorney Fees**

{31}     The district court stated at the December 26, 2012 hearing and in the resultant January 2013 order that it would award $2500 in attorney fees to Diana's estate and $1000 in attorney fees to Ms. Belcher for defending against Sharon's non-meritorious motions. The record does not establish how the district court determined the amount of these awards. Sharon argues that the district court erred by not having a hearing during which evidence would be presented to establish (1) the factual basis for the attorney fee award and (2) whether the fees awarded were reasonable.

{32}     Sharon does not cite to the record, and we do not find, where she objected to this award of attorney fees or otherwise preserved this issue in the district court. *See* Rule 12-213(A)(4) (requiring appellant to include in the brief in chief "a statement explaining how the issue was preserved in the court below"). In its response to Sharon's motions, Diana's estate requested that the district court award attorney fees incurred in defending against Sharon's motions because the motions were "baseless" and "meritless." Sharon filed no further pleadings regarding this request for attorney fees. When the district court stated that it was awarding attorney fees at the December 26, 2012 hearing, Sharon's counsel did not object to the award of attorney fees and

26

did not ask the district court to make factual findings or take evidence as to reasonableness of the awards. After the district court entered its January 2013 order awarding attorney fees, Sharon did not submit any written objections or file a motion to reconsider the award on any factual or legal basis. Thus, we do not review this issue because Sharon did not preserve this argument in the district court and now raises it for the first time on appeal. *See Crutchfield*, 2005-NMCA-022, ¶ 14 ("To preserve error for [appellate] review, a party must fairly invoke a ruling of the district court . . . . Such preservation allows the district court an opportunity to correct error, thereby avoiding the need for appeal, at the same time creating a record from which the appellate court can make an informed decision. On appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue." (citations omitted)); *see also O'Neel v. USAA Ins. Co.*, 2002-NMCA-028, ¶ 22, 131 N.M. 630, 41 P.3d 356 (declining to review the district court's decision regarding attorney fees award "in the absence of a timely objection below").

**F.    Arbitration Clause in the Trust**

{33}    On appeal, Sharon argues that the district court lacked subject matter jurisdiction over this matter because the Trust contained a provision that "established

27

binding arbitration as the sole method of resolving disputes between the parties." We disagree. Over three decades ago, our Supreme Court established that "a valid arbitration defense does not divest the court of jurisdiction, and is not properly raised by a Rule 12(b)(1) motion, [to dismiss for lack of subject matter jurisdiction.]" *Dean Witter Reynolds, Inc. v. Roven*, 1980-NMSC-029, ¶ 11, 94 N.M. 273, 609 P.2d 720; *see also Daniels Ins. Agency Inc. v. Jordan*, 1982-NMSC-148, ¶ 5, 99 N.M. 297, 657 P.2d 624 (stating the same). When the right to arbitration is not timely asserted, such failure is considered a waiver of the parties' right to arbitrate. *See United Nuclear Corp. v. Gen. Atomic Co.*, 1979-NMSC-036, ¶¶ 32-79, 93 N.M. 105, 597 P.2d 290 (analyzing the numerous circumstances where a party will be recognized to have waived the right to arbitration by failing to timely invoke its right to arbitration); *AFSCME v. City of Albuquerque*, 2013-NMCA-049, ¶ 23, 299 P.3d 441 (recognizing that a party "who claims a right to arbitration must take some action to enforce that right . . . within a reasonable time after the suit is filed" (omission in original) (internal quotation marks and citation omitted)). For these reasons, and because Sharon raises her arbitration defense for the first time in her reply brief, we do not address the issue further. *See Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 29, 127 N.M. 282, 980 P.2d 65 (stating that appellate courts do not address arguments raised for the first time

in a reply brief, unless such arguments are directed to new arguments or authorities presented in the answer brief).

**G.      Improper Dismissal of Sharon's Claims Against Ms. Belcher**

{34}      Finally, Sharon includes an argument heading in her reply brief stating that "the [district] court improperly dismissed the claims of the trustee's self-dealing[.]" In the body of this argument, Sharon reiterates the arguments in her brief in chief that the district court improperly approved the discounted fees Mr. Burnett determined to pay to Ms. Belcher and improperly refused to hear testimony about the reasonableness of those fees. We have fully addressed these arguments in previous sections of this opinion. To the extent that Sharon's reply brief argument raises a different issue, we decline to review it because it is made for the first time in the reply brief and because it is also too vague and undeveloped. *See id.*; *Headley*, 2005-NMCA-045, ¶ 15 (observing that we do not review unclear or undeveloped arguments).

**CONCLUSION**

{35}      For the reasons stated, we affirm the district court's orders concerning the Trust in both the 2005 and 2012 cases that were consolidated herein. We remand these matters back to the district court to carry out its prior rulings and to conduct any further proceedings that may be necessary regarding the final resolution of the Trust.

{36}      **IT IS SO ORDERED.**

29

_____

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**LINDA M. VANZI, Judge**

30